## EASTERN DISTRICT,

## 1858.

———o———

## COUNTY OF PISCATAQUIS.

———o———

STATE *versus* M. LAWRENCE LIBBY.

The previous confessions of one on trial for adultery, that he had a wife, and that the woman with whom he lived was his wife, are admissible as evidence of marriage.

Instructions to the jury that " if from all the testimony in the case introduced for the purpose of proving the marriage of the defendant, they were satisfied beyond a reasonable doubt that he was legally married, and his wife to whom he was legally married was living at the time the crime was alleged to have been committed, they were authorized to find the fact of marriage," were held to be correct.

This was an INDICTMENT against the defendant for adultery, with one Vesta Brown. To prove the marriage of the defendant, the county attorney called Charles H. Chandler, who testified that he had known the defendant ever since he came into Foxcroft, four or five years ago; his family came some time after. He heard the defendant say he had a wife and family, and that he had sent for them. He introduced Mrs. Libby to him as his wife, or as Mrs. Libby.

Calvin Chamberlain testified that the defendant and family boarded with him at his house in Foxcroft; his family consisted of himself, wife and daughter. He introduced her as Mrs. Libby; they occupied one chamber. He lives with her now, most of the time. He had three daughters; he treated them as his daughters.

Edward S. Palmer testified that he had known the defendant six or eight months. His family consists of himself, his wife and two daughters. He could not say as he ever heard the defendant call her his wife.

Josiah B. Mayo testified that he had known the defendant some six years. He boarded at the house of the witness, with his supposed wife and youngest daughter; he said he wanted board for his wife and youngest child. Witness could not say whether he introduced her as his wife, or Mrs. Libby. He usually called her by her Christian name.

Hiram Douty testified that he had known the defendant ever since he moved into Foxcroft. He had visited the defendant's family, but never heard him say he was married.

To all of this testimony the defendant's counsel objected, seasonably as it was offered, as incompetent and inadmissible. But the court admitted it.

Said Chandler and Daniel H. Remick, who were introduced by the county attorney, called the woman with whom the adultery was alleged to have been committed, Vesta Brown. Other witnesses for the state spoke of her as the Brown girl.

Being called herself by the defendant, she swore her name was Vesta A. Brown.

There was testimony tending to prove the commission of the offence charged.

Upon this evidence the court instructed the jury that if, from all the testimony in the case, introduced for the purpose of proving the marriage of the defendant, they were satisfied beyond a reasonable doubt, that he was legally married, and his wife to whom he was legally married was living

State *v.* Libby.

at the time of the crime alleged to have been committed they were authorized to find the fact of his marriage.

But if they were not so satisfied, they would find that he was not married.

The counsel for the defendant requested the court to instruct the jury that said testimony, introduced to prove the marriage of the defendant, was insufficient to prove it in the trial of this indictment.

This instruction was refused.

The counsel for the defendant contended, that the indictment having alleged that the defendant committed adultery with Vesta Brown, the state must prove that it was committed, if at all, with Vesta Brown, to maintain the indictment, and that if the name of the woman with whom it was alleged to be committed was Vesta A. Brown, as she herself swore, this allegation in the indictment failed, and they would find a verdict of not guilty.

But the court instructed the jury, that if they were satisfied, from the testimony in the case, that she was as well known by the name of Vesta Brown as Vesta A. Brown, they would be warranted to find that the offence, if it was committed, was committed with Vesta Brown.

The jury returned a verdict of guilty.

*A. Sanborn*, counsel for the defendant, argued in support of the exceptions.

The evidence of cohabitation and reputation of marriage of the defendant was improperly admitted. *State* v. *Roswell*, 6 Conn. R., 446; Swift's Ev., 140; *Fenton* v. *Read*, 4 Johns. R., 52; *The People* v. *Humphrey*, 7 Johns. R., 314; *Commonwealth* v. *Littlejohn et al.*, 15 Mass. R., 163; *State* v. *Winkley*, 14 N. H. R., 480; *Clayton* v. *Wardell*, 4 Com. R., 231; Phillips' Ev., vol. 4, 254, note 97; Starkie's Ev., vol. 2, 932; *Damon's Case*, 6 Greenl. R., 148.

The great rule established by the highest tribunals is, that a marriage in fact, in contradistinction to a marriage inferable from circumstances, must be proved in indictments for

adultery and bigamy; that direct evidence of marriage, such as the testimony of a witness who was present at the cere- mony, and the record or a copy of the record, with proof of identity, is only admissible, and that indirect or presumptive evidence, such as cohabitation, reputation, and confessions, from which a marriage may be inferred, are inadmissible. *Ham's Case,* 11 Maine R., 391; *State* v. *Roswell,* 6 Conn. R., 446.

In this state, confessions of marriage, deliberately and ex- plicitly made by the defendant, are competent and sufficient to prove the marriage. *Cayford's Case,* 7 Greenl. R., 57; *Ham's Case,* 11 Maine R., 391.

To this extent and no more, has the rule been relaxed in our courts. *State* v. *Hodgkins,* 19 Maine R., 154.

A similar doctrine has obtained in South Carolina, Penn- sylvania, Virginia and Ohio. *State* v. *Britton,* 4 McCard R., 256; *State* v. *Hilton,* 3 Rich. R., 434; *Warner* v. *Com.,* 2 Virg. Cas., 95; *Com.* v. *Montaglee,* Ashmead R., 272; Arch- bold's Cr. Pr. & Pl., vol. 5, 611, note, proof.

But in this case at bar, the testimony to prove confessions of marriage, falls far short of confessions deliberately and explicitly made. The confessions or declarations proved, were only that the defendant " said he had a wife and fam- ily," and " that he introduced his supposed wife as Mrs. Lib- by, or as his wife." No witness heard him say he was mar- ried. The testimony should have been rejected on this ground.

If this testimony was inadmissible, it was insufficient. But if it was admissible, it was insufficient. *Cayford's Case,* 7 Greenl. R., 57; *Ham's Case,* 11 Maine R., 391; *State* v. *Ros- well,* 6 Conn. R., 446; Greenl. Ev., vol. 2, s. 49.

This long established rule of criminal evidence should not be changed or modified further by this court. *State* v. *Ros- well,* 6 Conn. R., 446; *State* v. *Hodgkins,* 19 Maine R., 155.

The allegation in the indictment, that the adultery was committed with Vesta Brown, was material, and must be proved. Vesta Brown and Vesta A. Brown are different

names.  *Commonwealth* v. *Perkins,* 1 Pick. R., 388; *Commonwealth* v. *Hall,* 3 Pick. R., 262.

It was a clear mistake in the name of the woman.  The mistake is fatal.

Besides, on the plea of not guilty, only one single issue was presented to the jury.

The judge submitted the same issue as would have been raised on a plea in abatement for misnomer.  This was a new issue, not made by the pleadings, necessitating the jury to pass upon two issues, when one only was before them. If it is wrong in the pleader to raise two issues in one plea, it cannot be right in the court to present two issues to the jury, when only one is formed by the pleadings.

*N. D. Appleton,* attorney general, for the state.

I. The testimony introduced to prove the marriage in this case, was properly admitted.

The question is, whether the evidence of the defendant's confessions that he had a wife and family, and his acts in living with a woman whom he called his wife, or Mrs. Libby, when he introduced her to the witness, and whom he treated and recognized as his wife, were properly admitted to prove the marriage of the defendant, or whether, in cases like this, there must be direct proof of the fact of marriage.

It is believed that the testimony was properly admitted by the well established rules of evidence, as well as by the authority of adjudged cases.

The voluntary and deliberate confessions of guilt are among the most effectual proofs in the law, and are always admissible in evidence.   1 Greenl. Ev., s. 115; 2 ib., s. 45.

A man's own acts, conduct and declarations, are always admissible in evidence against him.   1 Starkie's Ev., 61.

As against himself, it is fair to presume that his words and actions correspond with the truth; it is his own fault if they do not.   1 Starkie's Ev., 61.

The general principle being admitted, that a man's confessions or admissions are competent evidence against him,

31

there is no reason why the admission of his marriage should be excluded.

Greenleaf says, no good reason has been given to distinguish this from other cases of admission, where it may be received, though it may not amount to sufficient proof of the fact.

Any recognition of a person standing in a given relation to others, is *prima facie* evidence against the person making such recognition, that such relation exists, and if the defendant has seriously admitted the marriage, it will be received as sufficient proof of the fact.   2 Greenl. Ev., s. 49.

East, in his P. C., vol. 1, 470, says, with respect to a bare acknowledgment, it may be difficult to say that it is not evidence to go to a jury, like the acknowledgment of any other matter in *pais.*

In *Norwood's Case*, confession and cohabitation, &c., were admitted as evidence to prove the relation of husband and wife, in petit treason.   1 East, 469.

So in *Freeman's Case*, for polygamy, a witness proved that he knew the prisoners ; that Mary Russell, who was still alive, lived with him, and he acknowledged he had been married to her in Scotland.   1 East, 469.

This testimony has been admitted by this court, as competent evidence to go to the jury in proof of marriage.

*Cayford's Case*, 7 Greenl. R., 57.   This was a case of indictment for lewd and lascivious cohabitation.   Proof was admitted that the defendant moved from New Hampshire to Maine, twenty years before, and some years after sent for his "*wife and family*," a woman and two children, whom he received and treated as his wife and children, *calling her his wife*.   They continued to live together.   He confessed he was married in England.

MELLEN, C. J., in this case, in an elaborate opinion, examined the cases fully, and affirmed the ruling at *Nisi Prius*. That was a case of a foreign marriage.   But he states that the court did not mean to say that the deliberate and unequivocal confession of a man charged with adultery, that

he was then a married man, though married in this state, and without any corroborating circumstances, would not be sufficient for a conviction.

In *Ham's Case*, 11 Maine R., 391, the question came again before our courts in the case of a domestic marriage. The whole subject was again considered by the court, and the opinion, as given by the Chief Justice, was, that in the trial of a person for adultery, the marriage necessarily to be proved, in order to sustain the indictment, whether solemnized here or elsewhere, may be proved by the voluntary and deliberate confession of the defendant.

In that opinion he says, we apprehend that the interests of public justice would be advanced by a relaxation of the rules of evidence touching the point before us, and by a more liberal principle applied in the investigation of facts, so that the laws of the land may be more surely enforced against unprincipled offenders, and the public morals be more faithfully and effectually guarded.

It is true the facts in that case, as proved, were held not sufficient to authorize a conviction; but the decision conclusively settles the question, that a marriage may be proved in the mode allowed in this case. The whole argument and reasoning of the opinion is satisfactory and convincing.

The next case where this question, as to proof of the marriage on indictment for adultery, has arisen, is the case of *State* v. *Hodgkins*, 19 Maine R., 155.

There WHITMAN, C. J., recognizes the doctrine as settled, which dispenses with direct proof of the marriage in such cases. An attempt was made in that case to prove a marriage in *fact*, but the proof was not satisfactory; and there being no evidence of the confession of the fact, by the prisoners, the exceptions were sustained.

In this case, it was proved by a sister of the defendant, that she was present at the defendant's marriage, at her father's house, some twenty-five years before the trial, and that the defendant lived with his reputed wife till within eight years, and had nine children by her before they separated.

But the witness could not state by *whom* they were married, and as the government failed to prove the *authority* of the person who solemnized the marriage, the prosecution failed.

*Queere.* Was this case decided right? After such a lapse of time, would not the jury be justified in *presuming* the *authority* of the person who solemnized the marriage, and being satisfied of the fact, should their verdict have been disturbed? Is the *strictness* of proof here required consistent with reason and sound legal principles? See *Damon's Case,* and cases cited.

*Wedgewood's Case,* 8 Greenl. R., 75. The only point settled here was, that the *record* of the marriage was held insufficient, without proof of the identity of the parties.

*Damon's Case,* 6 Greenl. R., 148. Indictment for bigamy. Oral proof that the person who solemnized the first marriage was a settled minister, and had been forty years, and the magistrate who solemnized the second marriage had often *acted* in that capacity, was held to afford a presumption that they acted legally, and is *prima facie* evidence of authority.

Proof by witnesses who saw the marriage is *prima facie* sufficient, and whoever would impeach it must show wherein it is irregular. 2 Dane, Abr., ch. 46, a. 3, 4.

There is no distinction between a marriage and a lawful marriage. Every marriage must be lawful, or it is no marriage. Ib., a. 3, s. 1.

The rule that a marriage in fact must be proved by direct evidence, as contradistinguished from one inferable from circumstances, in cases of adultery, is founded on a *dictum* of Lord Mansfield, in the case of *Morris* v. *Miller,* 4 Bur., 2059, in which he states that in prosecutions for *bigamy,* a marriage in fact must be proved. That was a civil action for criminal conduct, and a marriage in fact was required to be proved. But that opinion was afterwards qualified by Lord Mansfield, in the case of *Bent* v. *Barlow,* Douglass R., 174, in which he says, an action of criminal conduct has a mixture of penal prosecution; for which reason, and because it might be turned to bad purposes, giving the name and char-

acter of *wife* to women to whom they were not married, it struck me, in the case of *Morris* v. *Miller*, that in such an action a marriage in *fact* must be proved, and refers to a case before DENNISON, J., who admitted *other proof* of an actual marriage. And as to the proof of *identity*, whatever is necessary to satisfy a jury is *good evidence.* Suppose the bell ringers were called, and proved that they rung the bells, and came immediately after the marriage and were paid by the parties; or suppose persons were called who were present at the *wedding dinner,* &c.

And BULLEN, J., said, " Suppose a maid servant should be called, and proved that the woman always went by another name, *A,* till that day, when she went out, and on her return, and ever after, was called *Mrs. B.* Surely that would be *evidence* of *identity.*" All this would certainly be *presumptive evidence.*

In *Rigg* v. *Curgenven,* 2 Wilson R., 399, the court, in referring to the case of *Morris* v. *Miller,* say, to be sure a defendant's saying in jest that he had laid with the plaintiff's wife, would not be sufficient alone to convict him in a case of criminal conduct; but if it were found that the defendant had seriously or solemnly *recognized that he knew the woman he had laid with was the plaintiff's wife,* we think it would be evidence proper to be left to a jury, *without proving the marriage.* (This was two years after the case of *Morris* v. *Miller.*)

II. The instructions to the jury were correct, and those requested properly refused.

If the proof of the marriage was rightfully admitted, arising from the confessions and acts of the defendant, its sufficiency to satisfy the jury of the fact, must be left wholly with them, as it was, in the charge of the judge.

III. The instructions that if the person with whom the adultery was alleged to be committed was as well known by the name of Vesta Brown as Vesta A. Brown, they would be warranted in finding that the offence, if committed, was committed with Vesta Brown, was also correct.

This was a question of identity, and must be proved. The testimony showed that she was known by different names. The jury found that she was known as well by the one, as the other name.

*State* v. *Grawl*, 22 Maine R., 171. In this case the property stolen was alleged to be that of E. Emerson, when in fact his father of the same name resided in the same town, and the property was owned by the son, who wrote his name E. Emerson, Jr. It was held that junior was no part of the name, and that the *ownership* was sufficiently proved.

*Rex* v. *Peace*, 3 B. & A., 579. This was an indictment for assault and battery, on Elizabeth Edwards. It appeared that there were two of the same name, mother and daughter. The assault was committed on the daughter. The objection was taken that there was a misdescription, but overruled. The court say, the question is not whether the party assaulted has been rightly described, but *who the party is*, who is described in the indictment as having been assaulted. Here that has been sufficiently proved. *Franklin* v. *Palmage*, 5 Johns. R., 84; *Kincaid* v. *Howe*, 10 Mass. R., 205; *State* v. *Homer*, 40 Maine R., 431; *Com.* v. *Tompson*, 2 Met. R., 551.

It is not necessary to state the name of the woman, the plaintiff being a married man.

APPLETON, J. This was an indictment for adultery. To prove the marriage the prosecuting officer introduced several witnesses, who testified that they "had heard the defendant say he had a wife and family, and that he had sent for them;" that after their arrival "he introduced Mrs. Libby as his wife, or as Mrs. Libby;" "that they occupied one bed-chamber;" "that he had three daughters;" and in one case he said he "wanted board for his wife and youngest child;" that "he boarded at the house of the witness with his supposed wife and child;" and that he usually called the person whom he introduced as his wife or Mrs. Libby, by her christian name. This evidence was objected to, and

after being received, the counsel for the accused requested the court to instruct the jury that it was insufficient to prove the fact of marriage.

The request of the counsel was denied, and the court instructed the jury that " if from all the testimony in the case introduced for the purpose of proving the marriage of the defendant, they were satisfied beyond a reasonable doubt that he was legally married, and his wife to whom he was legally married was living at the time of the crime alleged to have been committed, they were authorized to find the fact of marriage."

The instruction given was clearly correct, and the evidence to which objections were taken, was properly admissible. If confessions are admissible to prove the commission of a crime, they are equally so to prove a portion of the facts which enter into and constitute the crime. If they are admissible to prove sexual intercourse—a fact essential to sustain the charge, they must be to prove the marriage. It would be absurd to admit a confession of sexual intercourse, and refuse the confession of a marriage, without proof of which, the offence would be differently classified, though belonging to the same general description of delinquency.

Accordingly it was held in *Damon's Case*, 6 Greenl. R., 148, that proof by witnesses who saw the marriage is *prima facie* sufficient, on an indictment for bigamy. In *Cayford's Case*, 7 Greenl. R., 57, this court decided that the prisoner's confession of the marriage, if it took place in another state, was sufficient, and gave a strong intimation that such evidence might be received, if the marriage was in this state. In *Ham's Case*, 11 Maine R., 391, the same question arose in the case of a domestic marriage, and it was determined that the marriage to be proved, wherever solemnized, might be shown by the confessions of the prisoner, deliberately and voluntarily made.

This question again arose in *State* v. *Hodgkins*, 19 Maine R., 155, and it was there held that a marriage in fact, as distinguishable from one inferable from circumstances, must be

proved; but the principle of law, that the confession of an adulterer of his marriage, deliberately and understandingly made, is receivable in evidence, was not denied, much less overruled. But the confessions once made, and under circumstances which render them admissible, it is for the jury to determine the just degree of confidence which they may place in them. The weight to be given to the testimony is especially for their consideration.

It was held in *State* v. *Winkley*, 14 N. H. R., 481, that a marriage in fact must be proved, and that it might be proved by any one present. But if provable by any one present, it is not readily perceived why the confessions of the person married are not equally satisfactory proof of the fact, in proceedings against him. *Habes reum confidentem.*

It is urged that the confessions may have been improvidently made, and that the prisoner, not married, may yet have confessed to a marriage. If so, still the possibility of the untruth of confessions, affords no reason for their exclusion. Such possibility would exclude all proof of this nature. If so, the defendant has little cause of complaint, as he is convicted because the jury placed too much reliance upon statements made by him.

Any regrets which naturally arise from the contingent though possible infliction of a misplaced punishment, will be somewhat lessened by the fact, that if the woman introduced by the defendant as his wife, and with whom he had lived as such for years, and by whom he had become the father of children, whom he recognized as his own, was not in fact his wife, that she was a competent, though she may be reasonably supposed to be a reluctant witness, by whom he could have disproved the *prima facie* case made out against him by his confessions.

No evidence of reputation appears to have been offered. The confessions of the defendant and his acts corresponding to those confessions, were properly received in evidence.

The instruction, that if the person with whom the adultery was alleged to be committed was as well known by the name

of Vesta Brown as by that of Vesta A. Brown, they would be warranted in finding that the offence, if committed, was committed with Vesta Brown, was correct.   By the testimony, it appeared that she was known by different names. The jury found she was as well known by one as by the other name.

*Exceptions overruled.*

TENNEY, C. J., CUTTING and HATHAWAY, J. J., concurred; RICE and GOODENOW, J. J., concurred in the result.