[Crim. No. 1220. In Bank.—December 6, 1905.]

THE PEOPLE, Respondent, v. A. B. C. SALMON, Appellant.

CRIMINAL LAW—OPEN AND NOTORIOUS ADULTERY—SECRET ADULTERY.— Under the act of 1871-1872, page 381, chapter 276, in order to sustain a conviction of living "in a state of open and notorious cohabitation and adultery," the adulterous relation must be shown to have been notorious. If such relationship is kept secret, even if it be continuous, the crime is not established.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. B. N. Smith, Judge.

The facts are stated in the opinion of the court.

W. R. Leeds, and Davis, Rush & Willis, for Appellant.

U. S. Webb, Attorney-General, and L. B. Wilson, for Respondent.

HENSHAW, J.—The information jointly charged A. B. C. Salmon and Daisy I. Salmon with the crime of living together "in a state of open and notorious cohabitation and adultery," each at the time being married to a designated person other than the co-defendant. The defendant was convicted, and

appeals from the judgment and from the order denying his motion for a new trial. The evidence may be taken as establishing that the defendant Salmon was, as charged, a married man, and that Daisy I. Salmon was not his wife, but was the wife of another man; that the defendants came from New Jersey to the city of Los Angeles, where they were not known, and rented a room in a lodging-house on South Olive Street in that city, where they lived together as husband and wife under the name of Salmon. The conduct of the Salmons while there is told in the evidence of Mrs. Hall, who conducted the lodging-house. She says: "I never knew that there was anything wrong between the defendant, A. B. C. Salmon, and Mrs. Daisy I. Salmon while they were at my place. They never lived at my place in open and notorious adultery, not that I knew anything about. They never lived in my place in a notorious state of any kind. They were very quiet. They were quiet, peaceable, gentlemanly and ladylike. Nobody was shocked by their being at my place that I know of. Nobody took any exception to their being there. If I or my sister had known there was any such thing as an adultery charge against them, or that they were guilty of living in an adulterous relation, we would not have permitted them to have stayed there."

The question thus presented is whether the charge in the information, which embodied the offense of the law, is established by this testimony. The statute upon the subject is entitled "An act to punish adultery," and provides, in section 2, that "If two persons, each being married to another, live together in a state of open and notorious cohabitation and adultery, each is guilty of a felony." (Stats. 1871-1872, p. 381, c. 276.) It will be noted that this statute does not punish secret adultery, which, from the moral aspect alone, is as grave an offense as known adultery. The object of the law, as pointed out by the decisions of all of the states where like statutes are found, is to prohibit the public scandal and disgrace of the living together of persons of opposite sexes notoriously in illicit intimacy which outrages public decency, and has a demoralizing and debasing influence upon society. It is designed, as the supreme court of Iowa phrases it, "To prevent evil and indecent examples, tending to corrupt the public morals." (*State* v. *Marvin*, 12 Iowa, 499; *Searls* v.

*People,* 13 Ill. 597; *State* v. *Crowner,* 56 Mo. 147.) In this state the distinction is drawn in *People* v. *Gates,* 46 Cal. 53, where the conviction was for the same offense, and this court reversed the case, saying that while the evidence tended to show that the defendant committed adultery with the woman named in the indictment, there was not the slightest proof of a living with her in a state of notorious adultery. "The offense consists in living in a state of open and notorious cohabitation and adultery. The notoriety is as material in making out the offense as is the fact of adultery committed." So it is the publicity of the offense, the demoralizing and debasing influence of the example, that the law designs to prevent. (*State* v. *Marvin,* 12 Iowa, 506; *State* v. *Johnson,* 69 Ind. 87.) Adultery is, as is well understood, sexual intercourse of one spouse with any one other than the other spouse. In this case the evidence may be taken as establishing that the defendant committed adultery, since it was shown that in all respects he sustained to Daisy Salmon the relationship of husband. But during all the time that they so lived in the house of Mrs. Hall no one in the community ever even suspected that defendant's intercourse was adulterous. Notoriety is the state or character of being well known, usually (and always when applied to crime) in an unfavorable sense. It is often found with words of similar import, such as "open" and "flagrant." Can it be said that a person whose adulterous relationship is not only not known, but not even suspected, is guilty of the open and notorious adultery made . punishable by our law? It certainly cannot. Having regard to the very design of the law, which is to prevent an affront to society by such notorious practice, having regard to the uniform decisions of the law, that where the adulterous relationship is kept secret, even if it be continuous, the crime is not made out, it must be answered that the evidence fails to establish the essential of notoriety, without which this particular offense is not proved. The two kinds of cases most commonly found in charges of this nature are when John Doe and Jane Roe, known in the community not to be husband and wife, maintain an open, flagrant, and notorious sexual relationship, without pretense of marriage, or do the same thing under pretense of marriage, where the community knows the facts, and knows therefore that the pretense is

false.    In both of these cases there is the same affront to social decency and to the marital relation which is the basis of it.    In this case, however, no such affront was put upon society.    The couple were by all supposed to be married, and comported themselves with all the respect due to the marriage relation and to society.    The moral delinquency may have been the same, but their conduct did not constitute a violation of the penal laws of the state.

The judgment and order appealed from are reversed.

Beatty, C. J., Angellotti, J., Van Dyke, J., McFarland, J., and Lorigan, J., concurred.