## JOHN KITCHENS v. STATE.

No. A-1960.   Opinion Filed May 7, 1914.

(140 Pac. 619.)

1.  **ADULTERY—Proof—Requisites.** In a prosecution for adultery, positive evidence of the direct fact is not required. The fact of carnal intercourse may be inferred from circumstances that lead to it by fair inference as a necessary conclusion.

2.  **SAME—Nature of Offense.** Adultery is an offense against the state, as well as against the injured husband or wife, notwithstanding the requirement that the prosecution therefor must be commenced on the complaint of the injured spouse.

3.  **WITNESSES—Competency—Husband and Wife—Adultery.** While adultery is a public offense, it is also a personal offense against the husband or wife, and they become competent witnesses to prove the offense.

4.  **ADULTERY—Defense—Relation of Master and Servant.** In a prosecution for adultery, the relation of master and servant between the parties does not necessarily exclude the existence of the relation denounced by the statute, and the relation of servant does not necessarily exclude the woman from becoming the defendant's mistress or concubine.

5.    **LEWDNESS**—Essentials of Offense—''Living Together in Open and Notorious Adultery.''    To constitute the offense of adultery, where it is alleged that the defendants were ''living together in open and notorious adultery,'' it is not necessary that the parties claim to be husband and wife.    It is sufficient if they live together in the same house in the familiar manner of husband and wife, and that their lewd and lascivious cohabitation and conduct was open and notorious.

*Appeal from District Court, Seminole County;*
*Tom D. McKeown, Judge.*

John Kitchens was convicted of adultery, and appeals. Affirmed.

The plaintiff in error, herein referred to as defendant, and one Mollie Mitchell were jointly informed against for the crime of adultery. The information, omitting the formal parts, was as follows:

"That John Kitchens and Mollie Mitchell did, in Seminole county, and in the state of Oklahoma, on or about the 1st day of April in the year of our Lord one thousand nine hundred and twelve, and anterior to the presentment hereof, commit the crime of adultery in the manner and form as follows, that is to say: That on the day and date above mentioned and in said county and state, did unlawfully, willfully, voluntarily, and feloniously associate and cohabit together, living in open and notorious adultery, they, the said defendants, not being then and there married to each other, and him, the said John Kitchens, then and there having a living wife, and the said Mollie Mitchell having a living husband, and they, the said defendants, did unlawfully, voluntarily, and feloniously have carnal knowledge together, each of the body of the other, contrary to," etc.

Upon arraignment the defendants interposed a demurrer to the information on the ground "that it did not state facts sufficient to constitute a public offense against the laws of Oklahoma." The demurrer was overruled, whereupon defendant entered a plea of not guilty, and asked for and was granted a separate trial. His trial resulted in a verdict of guilty as charged in the information, leaving the punishment to be fixed by the court. On the 11th day of October, 1912, motion for new trial having been duly filed, the same was overruled, and he was sentenced to be confined in the penitentiary for the term of two years. From the judgment and sentence he appeals.

The evidence shows without contradiction that defendant was married in Seminole county, in 1900, and had lived in said county with his family until the middle of November, 1910, at which time his wife and their seven children left him, and went to live in Hughes county; that his codefendant, Mollie Mitchell, was the wife of Cal Mitchell, and the mother of three children; that she lived apart from her husband, he having the care and custody of the three children born of their marriage, and all of tender years; that defendant resided upon his farm in a house consisting of one room, a kitchen, and an attic above; that in September, 1911, defendant brought to his house his co-defendant, Mitchell, for the avowed and ostensible purpose of making her his housekeeper, and to care for his aged invalid mother, who made her home there a part of the time, but who also lived much of the time with her other married children. For several weeks, Joe Brooks, the sixteen year old brother of Mrs. Mitchell, stayed on the place, and for a short time two men who worked, picking cotton, for the defendant stayed on the place. There was evidence tending to show that while Mrs. Mitchell was staying at his place, defendant took her with him back and forth on his trips to town, and they were often seen driving together.

E. S. King testified: That he lived a mile and a half from defendant, and saw Mollie Mitchell at defendant's and said to him: "Mr. Kitchens, under these circumstances they will get you, won't they?" Defendant answered: "No, they will have to prove that I had sexual intercourse with the woman before they can get me." That he had heard other neighbors complain of the conduct of defendant and Mrs. Mitchell. That defendant brought Mrs. Mitchell to writing school one evening, and the ladies present rebuked her, and the defendant did not come any more.

A. J. Morgan testified that he lived about 250 yards from defendant; that Mollie Mitchell stayed there about a year; defendant's mother was not there all the time; had seen defendant and the Mitchell woman there alone at night; saw defendant at different times with his arms around her; saw her sitting in his lap; called there one evening, and saw Mrs. Mitchell with her

arms over defendant's shoulders, and he was holding her clothes up so that her person was exposed from her waist down. Heard defendant say that he had the clap; that he caught it from Mollie Mitchell; saw defendant and Mrs. Mitchell in bed together.

Ed. Morgan testified that he lived with his father, A. J. Morgan; saw defendant at different times with his arms around Mollie Mitchell; saw him take indecent liberties with her person and hold her dress up; heard defendant say he had the clap, and that he caught it from Mollie Mitchell.

Neely Ross testified that he worked for defendant; often saw defendant and Mrs. Mitchell sitting in each other's lap, hugging, kissing, and playing with each other. After Mollie Mitchell had been there about two weeks heard defendant say that he had caught the clap from her.

John Crotzer testified that he stopped over night at defendant's house, and no one else was there except defendant and Mollie Mitchell; that they all slept in the same room; Mrs. Mitchell in one bed, and defendant and witness in another.

The evidence further shows that defendant's neighbors went to his place and objected to his keeping the Mitchell woman there, and he said to them:

"That he had been advised by lawyers that he had a right to keep a cook there, and they would have to catch him doing business with her, and would have to prove it before they could convict him, and that he had been advised that no one had a right inside the inclosure without his permission, and that he was going to shoot the first damn man he caught in there like he would a dog."

On behalf of defendant several witnesses testified that they were often at his home and had never noticed any improper conduct on the part of defendant and Mrs. Mitchell.

Oscar Hull testified that he picked cotton for defendant three or four weeks in the fall of 1911, and stayed at his place; that Mrs. Mitchell did the housework; never saw anything indecent between them, and heard no vulgar talk. Defendant's mother was there a part of the time; that the boys working for

defendant went away a night or two fishing and left him and Mrs. Mitchell there alone.

Dr. J. C. Dovell testified that he had been defendant's physician and had treated him during the last two years for malaria and hemorrhoids; did not treat him for gonorrhea; that he had full opportunity to know whether or not defendant had such disease, and did not think that he had ever had it; that about the 1st of October, 1911, he commenced treating Mollie Mitchell for chronic gonorrhea, and treated her for several months; that she was brought to his office by defendant, and he continued to accompany her when coming for treatment while he had the case in charge; that without using preventatives and disinfecting, he did not think it would have been possible for one to have had intercourse with Mrs. Mitchell while he was treating her without catching the disease.

Mollie Mitchell testified that she was a married woman, separated from her husband; that she had worked for defendant for more than a year as a servant, and he paid her three dollars a week for her services; that she never stayed alone with defendant. She denied all acts of immoral conduct.

Defendant as a witness in his own behalf testified that he had hired Mollie Mitchell to care for his mother and cook for him and his farm hands; that he had never stayed in the house overnight alone with Mollie Mitchell. He denied all acts of immoral conduct or adulterous intercourse.

Defendant introduced testimony tending to impeach the character of certain of the state's witnesses as to truth and veracity. On rebuttal, evidence was given as to the good character of these witnesses.

*Willmott & Dean,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Chas. L. Moore,* Asst. Atty. Gen., for the State.

DOYLE, J. (after stating the facts as above). The provision of the Penal Code upon which the prosecution was founded defines the crime of adultery as follows:

"Adultery is the unlawful voluntary sexual intercourse of a married person with one of the opposite sex; and when the crime is between persons, only one of whom is married, both are guilty of adultery. Prosecution for adultery can be commenced and carried on against either of the parties to the crime only by his or her own husband or wife, as the case may be, or by the husband or wife of the other party to the crime: Provided, that any person may make complaint when persons are living together in open and notorious adultery." (Section 2431, Rev. Laws 1910.)

The main question to be reviewed is the sufficiency of the evidence. It is claimed that the trial court erred in denying defendant's motion for a directed verdict of acquittal, and in overruling the motion for a new trial, on the ground that the evidence was insufficient to support the verdict; the contention being that, as the prosecution was not commenced upon the complaint of the wife of defendant, or the husband of his codefendant, the proof must show that the defendants were "living together in open and notorious adultery," and that the proof only shows the relation of master and servant, and as such they might properly live together without invoking public scandal. In a prosecution for adultery, positive evidence of the direct fact is not required. To require positive evidence alone would be to give immunity to practically all offenders. Usually presumptive evidence alone is attainable, and the fact of carnal intercourse is inferred from circumstances that lead to it by fair inference as a necessary conclusion; without this rule, no protection whatever could be given to marital rights.

Under the provision of the Penal Code quoted, adultery is an offense against the state, as well as against the injured husband or wife, notwithstanding the requirement that the prosecution therefor must be commenced on the complaint of the injured spouse. The requirement that "prosecution for adultery can be commenced and carried on against either of the parties to the crime only by his or her own husband or wife, as the case may be, or by the husband or wife of the other party to the crime," pertains to the procedure only. That such complaint has not been made may operate to withhold authority to prosecute

or punish, but this does not affect the question of the actual guilt of the offending parties. The requirement is founded partly on principles of public policy which lie at the basis of civil society. If the parties injured choose to condone the wrong done, then no one else ought to be allowed to move in the matter.

While adultery is a "public offense," it is also a personal offense against the injured husband or wife, and they become competent witnesses to prove the offense. *Heacock v. State,* 4 Okla. Cr. 606, 112 Pac. 949.

However, under the proviso of the section quoted, any person may make complaint when it is alleged that the defendants "are living together in open and notorious adultery," as such adulterous cohabitation and its notoriety necessarily tends to debase and lower the standard of public morals by dishonoring the marital relation.

It appears from the record that in addition to the undisputed facts in evidence, the defendant, a married man, and his codefendant, a married woman, lived together; that there was competent evidence showing, or tending to show, the fact of illicit cohabitation, and that adulterous intercourse had habitually taken place between the parties while they were living together. If the parties for a single day lived together in open and notorious adultery, the offense was complete.

The evidence showing the existence of the relation of master and servant between the parties was properly admitted, but that relationship did not necessarily exclude the existence of the relationship denounced by the statute. Defendant was not living or abiding with his wife at the time charged, and the relation of servant did not necessarily preclude his codefendant from becoming his mistress or concubine.

The only question to be considered is whether the right to prosecute is sustained by evidence showing, or tending to show, that defendant was living with his codefendant in a state of open and notorious adultery. The courts, when called upon to determine what constitutes the state of living together within the pur-

view of statutes defining adultery, have defined it as the state of cohabiting.

In *Copeland v. State, ante,* 133 Pac. 258, it is said:

"Simply having occasional illicit intercourse, without a public or notorious living together, is not sufficient to constitute the offense of living in a state of open and notorious adultery. The parties must reside together publicly, in the face of society as if the conjugal relation existed between them; their illicit intercourse must be habitual."

We do not think it necessary that the parties should claim to be husband and wife. It is sufficient if they lived together and behaved themselves in each other's presence in the familiar manner of husband and wife, and that their lewd and lascivious conduct was witnessed by other persons. The law seeks not alone to prevent illicit cohabitation, and to prohibit the public scandal and disgrace incident thereto, but also to preserve and promote the institution of marriage, upon which the best interests, and indeed the existence, of society depend.

Without extending this opinion, already too long, by an analysis of the evidence, it is sufficient to say that there was competent evidence given tending to support every material allegation of the information. The jury were of opinion that such evidence was true beyond a reasonable doubt. The instructions given by the court fully and fairly presented the law of the case.

The judgment of the lower court is therefore affirmed.

ARMSTRONG, P. J., and FURMAN, J., concur.