## FRED SPENCER v. STATE.

No. A-2478.    Opinion Filed June 16, 1917.

Rehearing Denied January 5, 1918.

(169 Pac. 270.)

1.    **ADULTERY—Open and Notorious Adultery—Sufficiency of Information.** An information for open and notorious adultery which charges the offense on a single day is sufficient. It is not necessary to allege such offense with a **continuendo.**

2.    **SAME—Marriage—Proof.** Proof of admissions and declarations of the defendant are competent to prove marriage in a prosecution for adultery.

3.    **SAME—Sufficiency of Evidence.** Evidence examined, and **held** sufficient to sustain a conviction for living in open and notorious adultery.

4.    **SAME—Instructions.** For instruction held to be a sufficient definition of open and notorious adultery and not confusing or misleading, see body of opinion.

5,    **SAME—Elements of Offense.** Requested instructions based upon the theory of the defense that the fact that defendant and the woman with whom he was living were not husband and wife, and that defendant was married to another woman, must have been known to the community generally during all the time the parties were living in an adulterous relation before a conviction of open and notorious adultery could be had, **held,** properly refused. It is sufficient if the adulterous relationship became generally known among the neighbors and acquaintances of the parties before it ceased and prior to the commencement of the prosecution. After that proof of a single day's continuance of the unlawful relationship is sufficient to sustain a conviction.

*Appeal from District Court, Kiowa County;*
*James R. Tolbert, Judge.*

Fred Spencer was convicted of living in open and notorious adultery, and he appeals. Judgment affirmed.

*Hays & Hughes,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

MATSON, J. It is first contended that the court erred in overruling the demurrer to the information. The charging part of the information is as follows:

"That on the ———— day of October, A. D. 1914, at and within said county and within the jurisdiction of said court, one Fred Spencer, then and there being, did then and there unlawfully and feloniously live in open and notorious adultery and have sexual intercourse with one Mary Doe, whose real name to your informant is unknown, he the said Fred Spencer then and there, being a married man and the husband of one Bessie Spencer, and not the husband of said Mary Doe, contrary," etc.

The ground relied upon by counsel for the plaintiff in error is that living in an open and notorious state of adultery being a continuing offense, it is not necessary to allege the crime with a *continuendo.* We cannot agree with this contention. In the case of *Kitchens v. State,* 10 Okla. Cr. 603, 140 Pac. 619, this court said:

"If the parties for a single day lived together in open and notorious adultery, the offense was complete."

Also in the case of *Lyman v. People,* 98 Ill. App. 386, affirmed 198 Ill. 544, 64 N. E. 974, it was held:

"An indictment for adultery which charges the offense on a single day is sufficient where the proof showed that the adulterous relation continued for a period of four weeks or longer."

It is also contended that the evidence is insufficient to prove that the plaintiff in error was married to some other woman than the one with whom he cohabited at the time of the commission of this offense. The only proof of his marriage is by admissions and declarations upon his

part, together with the fact that during the time the proof shows that he was living with one Mary Doe, or Ella Spencer, he admitted that he brought a divorce proceeding in Oklahoma City, Okla., against another woman, who was at that time residing in Chicago, Ill. The notice of publication for service of summons in this divorce proceeding was also seen by several of the witnesses who testified. The first wife also appeared before the commencement of this prosecution, and in the presence of the defendant accused him of being her lawful husband, which fact he did not specifically deny. Also it appears that defendant had a property settlement with the Chicago woman at the time she was in Hobart. The case was not defended upon the theory that the plaintiff in error was not married to some other woman at the time of this alleged unlawful cohabitation. We have carefully examined the evidence along this line, and it is our opinion that the proof is sufficient in view of the fact that there was no denial that the marital relation existed between the defendant and Bessie Spencer. Proof of admissions and declarations of the defendant is competent to establish such relationship. *Owens v. State*, 94 Ala. 97, 10 South. 669; *Cook v. State*, 11 Ga. 53, 56 Am. Dec. 410; *State v. Sanders*, 30 Iowa, 582; *State v. Libby*, 44 Me. 469, 69 Am. Dec. 115; *Commonwealth v. Holt*, 121 Mass. 61; *State v. McDonald*, 25 Mo. 176; *Boger v. State*, 19 Tex. App. 91.

It is also contended that the demurrer to the state's evidence should have been sustained. While demurrers to evidence in criminal cases are not recognized by our Code, we will treat this demurrer as a motion on the part of the defendant's counsel addressed to the trial court to direct a verdict of "not guilty." The basis of this

assignment is that there was no evidence to show that Fred Spencer and Ella Spencer, or Mary Doe, were living in open and notorious adultery. The proof shows beyond question that for a period of time covering some 18 months or more Fred Spencer and a woman who was known as Ella Spencer lived together alone and maintained a residence connected with a photograph gallery, which they operated and maintained in the city of Hobart. This residence was located on Main street in said city, in the business district thereof. When the defendant first came to Hobart he announced to some of his neighbors that his wife would soon follow him, and in a short time the said Ella Spencer appeared upon the scene. She was introduced by the defendant as his wife, and as Mrs. Spencer, and assisted him in caring for his photograph gallery, did the marketing, opened a bank account in the name of Ella Spencer, paid bills connected with the photograph business, assisted in maintaining a garden, did the washing and ironing, and in general occupied the intimate relation that a wife does to a husband. She was received by the public generally as the wife of the defendant, and was so known and accepted. This is the uncontradicted proof on the part of both the state and the defendant. It is the theory of the defense in this case, however, that, during all this time these parties were living together in secret in an adulterous relationship, they were received as husband and wife, and nobody knew different; that therefore, although the relationship was adulterous and the living together open, there was no notoriety connected with the offense, and therefore there can be no conviction. Counsel rely upon the case of *People v. Salmon,* 148 Cal. 303, 83 Pac. 42, 2 L. R. A. (N. S.) 1186, 113 Am. St. Rep. 268, cited by this court in the case

of *Copeland v. State,* 10 Okla. Cr. 1, 133 Pac. 258, where the question of what constitutes notoriety was not involved.

Whatever may be said respecting the Salmon Case, it will be appropriate in this opinion to note that after the Supreme Court of California had given the construction to the words "open and notorious" that was given in that case the Legislature of California in 1911 saw fit to strike the words "open and notorious" from their statute. Were it absolutely necessary to do so in this opinion, upon mature reflection this court could not conscientiously follow all the arguments of the Supreme Court of California in the Salmon Case. That case opens the doors for parties to hie themselves to strange communities and live openly in adultery with one another and by means of concealing their true relationship impose themselves upon the public generally and be received in decent society to the humiliation and disgrace of the law-abiding people, whereas if their true relationship were known the public could protect itself against such conduct.

It is not the policy of the law to encourage a culpable defense to an act which is itself criminal. The adulterous relationship was criminal. The living together was open and well known to the community generally. The Salmon Case is based upon the assumption that after such relationship becomes known there is no public scandal and disgrace occasioned by reason of the previous living together of the parties in open adultery. In other words, the notoriety will only attach should the parties continue that relationship. It is our opinion that when such a relationship has been made to appear the public scandal and disgrace is just as great and the notoriety is just as prevalent as if it had been known during the entire time. The notoriety of such a continuous living together and

the thought that good people had been deceived into receiving such parties into their homes and treating them with the respect and consideration due to lawfully married people are humiliating in the extreme.   The Legislature never intended to condone such conduct as that merely because the guilty parties are able for a time to conceal their true relations.  To so hold, in our opinion, is a fraud upon society, and tends to destroy rather than to preserve and promote the institution of marriage.   To confess their illicit relation would expel them from all decent society, and very few people are so infatuated as to forego the advantages of social intercourse and respectability if they can obtain them by the assumption of virtue.

This subject has heretofore been commented upon by this court in the case of *Kitchens v. State,* 10 Okla. Cr. 603, 140 Pac. 619, a later case than the Copeland Case, in which the court said:

"The law seeks not alone to prevent illicit cohabitation and to prohibit the public scandal and disgrace incident thereto, but also to preserve and promote the institution of marriage, upon which the best interests, and indeed the existence, of society depend."

There was not only an open living together by these parties, but after it became known by many in the community that the said Fred Spencer and the said Ella Spencer were not married to each other they continued to maintain the same relationship, and even after the county attorney had notified this defendant that their relationship was unlawful and defendant agreed to leave the community in 48 hours (which he did), they afterwards returned, and in the very face of society and in defiance of the laws of this state again assumed this unlawful relation.   This all occurred after it had become

known that the said Fred Spencer had sought a divorce from another woman. Thereafter when the wife appeared upon the scene from Chicago and was seen upon the public thoroughfares of the city of Hobart, and went to the place of business of this defendant, and it was published in the daily paper in the city of Hobart that she had appeared upon the scene, it is apparent that the relations between Fred Spencer and Ella Spencer did not then cease.

This prosecution was instituted in October, 1914, and the trial was had in the latter part of December, 1914, and some of the witnesses testify that the said Ella Spencer did not leave Hobart finally until about three weeks before the trial. In view of all these facts and circumstances it is our opinion that were this court inclined to follow the doctrine of *People v. Salmon, supra,* there is yet sufficient evidence to sustain this conviction on the theory that there was a continuance of the adulterous relation openly after that relation became generally known in the community in which these parties were residing before this prosecution was instituted. As was said in *Kitchens v. State, supra:* "If the parties for a single day lived in open and notorious adultery, the offense was complete." Surely after the happening of all the events herein enumerated there was an apparent intention on the part of the defendant to continue his adulterous relation with Ella Spencer. We hold, therefore, that the court did not err in refusing to instruct the jury to acquit the defendant.

The trial court gave the following instruction over the objection and exception of the defendant:

"The particular statute upon which the information is based is: 'Adultery is the unlawful voluntary sexual

intercourse of a married person with one of the opposite sex; and when the crime is between persons, only one of whom is married, both are guilty of adultery. Prosecution for adultery can be commenced and carried on against either of the parties to the crime only by his or her own husband or wife, as the case may be, or by the husband of the other party to the crime: Provided, that any person may make complaint when persons are living together in open and notorious adultery.' The jury will observe that under the law ordinary adultery is simply the unlawful intercourse of a married person with one of the opposite sex other than his wife or her husband. The defendant, however, in this case is charged with the crime of unlawfully, voluntarily, and feloniously living in open and notorious adultery with a woman not his wife, and under the law the burden of proof is upon the state to not only prove the defendant committed the crime of adultery with the person named as Mary Doe, but also that he lived with her in open and notorious adultery, to warrant a conviction. If adultery is not open and notorious, it is not a crime punishable by law, unless the prosecution is commenced and carried on by the wife or husband of one of the offending parties. Simply having occasional illicit intercourse without a public or notorious living together is not sufficient to constitute the offense of living in a state of open and notorious adultery. The parties must reside together in open and notorious adultery, as charged against the defendant, publicly in the face of society as if the conjugal relation existed between them, and their illicit intercourse must be habitual to constitute the crime charged against the defendant."

It is contended that the said instruction is confusing as to the law applicable to the case, and does not contain a correct definition of what is meant by "living together in open and notorious adultery." It will be noted that the court distinguished what he termed "ordinary adultery" from the crime charged in the information. This, it is

claimed, tended to confuse the jury, in that they were led to believe that the defendant was being prosecuted for "extraordinary adultery." If such had been the case, we cannot see wherein the jury could have been misled by the instruction as a whole. The same distinction was made by this court in *Heacock v. State*, 4 Okla. Cr. 606, 112 Pac. 949, wherein at the bottom of page 609 the term "ordinary adultery" is used to distinguish between the offense which only the husband or wife of the offending party may prosecute and that which is open and notorious and an offense against society itself.

The definition given of open and notorious adultery follows the language of this court in the cases of *Copeland v. State*, 10 Okla. Cr. 1, 133 Pac. 258, and *Kitchens v State*, 10 Okla. Cr. 603, 140 Pac. 619. The conclusion is reached that the foregoing instruction was not confusing or misleading, and that the definition given of living in open and notorious adultery was correct and sufficient under our statute.

It is also contended that the trial court erred in refusing to give certain instructions requested by the defendant. These instructions were based upon the theory of the defendant that the fact that Fred Spencer and Ella Spencer were not husband and wife must have been known to the community generally during all the time they were living together in the relation of husband and wife before a conviction of open and notorious adultery could be had. We do not understand that to be the law of this state. It is sufficient if the adulterous relationship became generally known among the neighbors and acquaintances of the parties before it ceased and

prior to the comemncement of the prosecution. After that, proof of a single day's continuance of the unlawful relationship is sufficient to sustain a conviction. It is our opinion, therefore, that the instructions refused did not correctly state the law as applicable to the proof in this case, and the refusal to give the same in this case was not erroneous. The instructions given by the trial court were sufficient to cover the law of the case as applicable to the facts.

The judgment of the trial court is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.