A. R. BARBER *et al.* v. STATE.

No. A-2877.    Opinion Filed April 8, 1919.

(179 Pac. 790.)

1.    **LEWDNESS—"Living in Open and Notorious Adultery"—Offense.** To constitute "living in open and notorious adultery" under the statute, there must be something more than occasional illicit intercourse indulged in: the parties must reside together publicly in the face of society, as if conjugal relations existed between them, and their so living must become generally known in the community in which they live.

2. **SAME—Sufficiency of Evidence**. The evidence in this case carefully considered, and found insufficient to sustain the verdict, and the judgment thereon rendered.

*Appeal from District Court, Jefferson County; Cham Jones, Judge.*

A. R. Barber and Effie Bailey were convicted of open and notorious adultery, and they appeal. Appeal abated as to defendant Barber after his death, and reversed and remanded as to Effie Bailey.

*Bridges & Vertrees* and *Guy Green,* for plaintiffs in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J. The plaintiffs in error, A. R. Barber and Effie Bailey, hereinafter referred to as defendants, were indicted for the offense of open and notorious adultery, convicted, and A. R. Barber fined $500, and Effie Bailey fined $25, and defendants jointly adjudged to pay the costs of this prosecution. To reverse the judgment rendered, they prosecute this appeal.

Since this appeal was perfected, this court has been legally informed that A. R. Barber has departed this life, and therefore this appeal is abated as to him.

The charging part of the information in this case is as follows:

"That in said Jefferson county, Oklahoma, on the 25th day of December, 1915, and prior to the finding of this indictment, the said A. R. Barber and Effie Bailey did unlawfully feloniously, and willfully and voluntarily have sexual intercourse with each other, the said A. R. Barber and Effie Bailey not then and there being husband and wife, and the said A. R. Barber being then and there married to another, and he, the said A. R. Barber, and Effie Bailey, did then and there live together in open and notor-

ious adultery, contrary to the form of the statutes in such case made and provided, and against the peace and dignity of the state."

The defendants did not demur to the indictment, but objected to, the introduction of any evidence, and of any evidence other than in support of the allegation in the indictment of open and notorious living together, and for the reason—

"that the indictment fails to charge an offense cognizant to the laws of Oklahoma, and that the said indictment is duplicitous, in that it seeks and does charge two separate offenses."

The court overruled the objections to the introduction of any evidence, and defendants excepted. Upon the conclusion of the opening statement to the jury by the county attorney, the defendants moved for a dismissal of the case upon the ground—

"that, if the statement was taken as true, it would not make out the crime as charged in the indictment."

The court overruled the motion to dismiss the case, and the defendants excepted. The defendants moved the court to require the state to elect whether or not it would prosecute for adultery, or for open and notorious adultery. Thereupon the state elected to prosecute for open and notorious adultery.

The undenied evidence in the case is that the defendant Barber and Mrs. Barber were married, 35 or 36 years prior to this trial, in Mississippi, and resided there until their removal to this state; that she knew the defendant Effie Bailey; that the said Effie Bailey had continuously resided in the family for 22 or 23 years as a member of the family, and removed with them from Mississippi to this state, and that such removal was first by wagon and then by train, and that, when traveling by wagon, they at times

slept in the wagons; that Effie Bailey and defendant
Barber, with the oldest child, slept in one wagon, and Mrs.
Barber and the other children slept in the other wagon;
that Mrs. Barber had not cohabited with Mr. Barber for
17 or 18 years, but that she had continued to live in the
same house with him, occupying a different room, until
January last; that in the home in which the family lived
there were three sleeping rooms; that Mrs. Barber occu-
pied the west room with some of the children, and that
Miss Bailey occupied the east room, and until about a year
ago the eldest daughter slept in the room with Miss
Bailey, and that the defendant Barber occupied the room
between the east and west rooms, and there was a door
entering into the said east room, and another door between
Mrs. Barber's chamber and the chamber of the defendant
Barber; that Mr. Barber was engaged in the mercantile
business, and that Miss Bailey was employed in his store;
that Miss Bailey continued to live as and was treated as
one of the family; that Mrs. Barber notified the defendant
Barber about last January that she refused to longer live
in the same house with the defendant Barber, and removed
from the said home, and had continued to live separate
from Mr. Barber since that time; that Mrs. Barber had
not caught the defendants in bed together in the last three
years; that Mrs. Barber agreed with the defendant Barber
that she would live in the house with him and raise the
children, of whom there were six; that during the time de-
fendant Bailey had no sweethearts; that no man courted
her while she resided as one of the Barber family, and that,
immediately on Mrs. Barber's removal from the home, de-
fendant Barber caused his married cousin and wife and
child to become inmates of the home, and that the said
parties, together with the defendant Bailey, have since com-
ing to this state, up to the trial of this cause, continuously

resided in said home; that Mrs. Barber has not seen any-
thing immoral between the defendants for four or five
years; that Mrs. Barber has never heard of any undue
familiarity between the defendants at Barber's store; that
she had never seen the defendants misbehave in public in
any way, or conduct themselves as husband and wife, or
heard the same discussed by any of the people of Terrell,
where the family of Barber resided; that Mrs. Barber and
the defendant Bailey belonged to the same church, and
went to church together until the last two years; that Mr.
Barber and Mrs. Barber have not during the last two years
had any words but little—"never had a real conversation";
that Barber sometimes drank, and that when he came home
in that condition he seemed to be angry, and he and Mrs.
Barber had words, but sometimes they did not speak, and
at such times he did not say anything about Miss Bailey;
that defendant Barber and Miss Bailey would go in the
spring and summer together to buy goods; that one of
Mrs. Barber's daughters accompanied them on such trips;
that Miss Bailey had charge of the dry goods department
of the Barber store, which was the largest store in the
town in which they lived; that Miss Bailey knew more
about dry goods than Mr. Barber knew; that Mr. and Mrs.
Barber had, prior to the coming of Miss Bailey into the
home, and after they had been married but a few weeks,
separated; that Miss Bailey had nothing to do with such
separation, and afterwards Mr. and Mrs. Barber fixed it
up and went back together; that defendant Barber, about
the time the grand jury which found the indictment in this
case was to convene, told his son that he wanted this
"stopped"; that he did not want this affair in court, on ac-
count of his children, and gave his son $50 and told him to
see his mother; that he would pay her way if she would go to

Texas and visit a relative; that said son complied with his father's request; that the purpose of said son, in thus seeing his mother, was to prevent this case from coming up in court, and that defendant Barber told his son that, if there was any fine to pay, he would pay it rather than see the case go on; that the son was a married man, and did not want the case in court; that the defendant Barber, before the grand jury which found the indictment in this case convened, sent another one of his sons to see his wife, and ask if they were going to leave, and to ask them to leave the state, and to tell them, if there was any fine to pay, he would pay it, and this son also complied with his father's request; that the defendant Barber did not get along with Mrs. Barber in the home as he did with Miss Bailey; that there was a distinction in the manner of his treatment of them; that it was the common talk of the family that illicit relations were going on between the defendants; that Mrs. Barber told her husband "that all of them could not live together any longer," and that Barber said he could not wind up his business without Miss Bailey; and that with her assistance he could do so by the 1st of January, and, Miss Bailey having gone, Mrs. Barber consented that she might come back, as she (Mrs. Barber) "did not want Barber to lose anything on her account," and Miss Bailey returned to the home and continued to reside therein as a member of the family.

The evidence was in direct conflict as to Mrs. Barber having caught the defendants in the act of sexual intercourse in Mississippi, and as to the defendant Bailey thereafter in Mississippi having given premature birth to a child, and as to Mrs. Barber having five or six years prior to the trial caught the defendants asleep in bed together in the home of the defendant Barber, and as to the manner

in which Miss Bailey was esteemed for chastity in Terrell, the home town of the defendants, and as to what was said by the people of Terrell as to the defendants' relations toward each other; but there was no direct evidence of the defendants having committed adultery in this state, except the evidence of Mrs. Barber, which was positively denied by Miss Bailey, who testified that she had never had sexual intercourse with Mr. Barber.

There was also uncontradicted evidence that, about two years prior to this trial, one of the sons of Mrs. Barber, who was present at the trial, at the home of the Barbers, "in a cowpen about sundown made indecent proposals to Miss Bailey," which she at once reported to the family, and immediately thereafter left their home and went to the home of her brother, and that at the instance of the Barber family she dropped her intention of prosecuting the son, and returned to and resumed her position as one of the family; that the said son and Miss Bailey had lived in the home since the said occurrence, and that she had not spoken to him since; that, when Mrs. Barber left the home, Miss Bailey intended leaving also, but that on the advice of her attorney she remained at the home; that the relations of Mrs. Barber and Miss Bailey became estranged after the trouble between her son and Miss Bailey; and that prior to the Barbers' leaving Mississippi, there was talk of improper relations between the defendants, and that Miss Bailey had suffered an abortion.

Upon the conclusion of the evidence the defendants requested the court to direct the jury to return a verdict of acquittal, which the court refused, and the defendants excepted.

There were several instructions given, and one requested instruction refused, to each of which the defend-

ants excepted, which said instructions and the requested instruction refused we deem unnecessary to set out, as we think the pivotal question is as to the sufficiency of the evidence to support the verdict and the judgment rendered.

In *State v. Sekrit,* 130 Mo. 401, 32 S. W. 977, open and notorious adultery is defined:

"Something more than occasional illicit intercourse, indulged in furtively or *sub rosa,* but, on the contrary, something aggressive and defiant in its nature, which fears not to flaunt its lecherous colors in the light of day and the frowning face of public reprobation.

"The offense consists in the living together in the manner of husband and wife, without being lawfully married, in the open assumption of the visible forms of matrimony, without the sanction of the nuptial tie, and without incurring those obligations and responsibilities which attach to the married state. Usually the notoriety is as material in making out the offense as is the fact of adultery committed." R. C. L. sec. 13, vol. 1, p. 638, and the authorities there cited.

In *Copeland v. State,* 10 Okla. Cr. 1, 133 Pac. 258, it is held:

"To constitute living together in open and notorious adultery, the parties must reside together publicly, in the face of society, as if the conjugal relations existed between them, and their illicit intercourse must be habitual."

The above definition of open and notorious adultery is quoted and approved in *Kitchens v. State,* 10 Okla. Cr. 603, 140 Pac. 619, and the definitions given in the Copeland Case and the Kitchens Case are again quoted and approved in *Spencer v. State,* 14 Okla. Cr. 178, 169 Pac. 270, L. R. A. 1918F, 592.

Applying the law as above cited to the evidence in this case, and remembering that the evidence does not positively

show a single act of illicit intercourse, or any act of misconduct on the part of the defendants within three years of the finding of the indictment in this case, we are of the opinion that the evidence is insufficient to support the verdict and judgment rendered, and that the court committed reversible error in refusing to direct the jury to acquit the defendants.

For the errors pointed out, this case is reversed and remanded.

DOYLE, P. J., and MATSON, J., concur.