HAWLEY STREET COMMISSIONER v. HOOPS.

1. ROAD TAX: CITIES: STATUTE CONSTRUED. The proviso in § 12 Chap. 154 Laws of 1858; deprives the townihip trustees of the power to levy road taxes in incorporated cities which had, prior to the passage of that act been erected into road districts. The power to levy such taxes is now vested in the proper authorties of such cities. WRIGHT, J., dissenting.

*Appeal from Muscatine District Court.*

SATURDAY, DECEMBER 21.

THE material facts are stated in the opinion of the court.

*Richman & Bro.*, for the appellant.

*Butler & Campbell*, for the appellee.

Lowe, C. J.—A suit to recover of defendant a road tax, assessed for the year 1859, within the limits of the city of Muscatine, by the trustees of Bloomington Township, under an act approved March 23d, 1858, agreeably to the provisions of the 12th section thereof, which authorized township trustees to levy a road tax not exceeding three mills on the dollar upon the township assessment, for the working upon, and repair of roads, with a proviso of the following, to-wit:

"That when incorporated cities are by act of incorpora-"tion heretofore passed and made road districts, this act "shall not interfere with such districts, but the same shall "be under the control of such city."

The city of Muscatine had by previous act been constituted a road district. It is situated within Bloomington township; the defendant resides within the limits of said city. The point to be settled is, whether he is liable to pay a road tax levied by the township trustees, under the act just referred to.

This depends upon the construction to be given to the above proviso. We have but little difficulty in arriving at its true meaning and object. When the law says that incorporated cities heretofore made road districts shall not be interfered with under said act, we suppose the legistature meant precisely what these words naturally signify, and that is, cities under such circumstances, shall be exempt from the operation of said act; and that their streets which are usually improved differently from ordinary roads, shall be under their own control. This can not, however, in any

just sense, be said to be the case, when the power to determine the amount of tax necessary to open and improve streets, is lodged with a district corporation that has no interest in, or connection with, the city. The municipal authorities of the city could not adopt any settled system for the improvement of their streets unless the means for doing so were under their control. To leave the power of originating or providing these means in the hands of the township trustees would be manifestly unwise and inexpedient. Their levy of a tax for such purpose might be wholly inadequate to, or in excess of, the amount required; and whilst they continued to exercise this power, the improvements of the streets in the city would virtually, to a greater or less extent, be under their control, and not that of the city. Hence we suppose there was a sufficient reason for for repealing so much of the amendment to the charter of Muscatine City, passed in July, 1856, as gave to the county authorities the same power which has been exercised by, but not conferred upon the township trustees in this case.

The improvement of streets, allies and side walks in all incorporated cities is one of its most important municipal objects, and the power to raise for this purpose the requisite means, by levying and collecting a municipal tax, will be found given in all their charters, as it is in the Muscatine City Charter.

What useful purpose is to be accomplished therefore, by dividing this power with the township trustees is not apparent. It certainly complicates matters, render the system of raising funds for municipal objects more burdensome and expensive, and at the same annoying to the tax-payer. For instance, we suppose that a road tax collected under a levy made by them, could hardly be expended upon side-walk and allies, because such objects do not seem to be contemplated by the road law, and yet this class of improvements

in a city is inseparably connected with that of its streets, and it is competent for the city of Muscatine, under its charter, to provide ample means by taxation for all these as well as other municipal objects.

We can see therefore, no reason why the township trustees should share a limited amount of this power with the city. The legislature evidently saw no necessity for it, and hence in the new road law of 1858, they expressly prohibited the township trustees, in the matter of a road tax, from interfering with incorporated cities heretofore constituted by law road districts.

Muscatine was so constituted; and it follows that the act of the trustees in levying the tax was nugatory and void, conferring no power upon the marshal of the city to collect the same, and therefore no suit can be sustained against the defendant for this tax.

The judgment below will be

Reversed.

WRIGHT, J., *dissenting*.—The point settled by the foregoing opinion is, that the city authorities of Muscatine, and not the trustees of Bloomington township, should have levied the road tax sought to be collected. This power in the city is claimed from the language of the *proviso* found in § 12 of the act of 1858. Aside from this, I affirm that no syllable or line can be found in any statute conferring the power.

There is a clear distinction between a tax for general road purposes, and one for the improvement and grading of streets and alleys, in a city. This distinction is so obvious and manifest, that I need do no more than mention it, expressing, however, my surprise that the two purposes should be confounded and treated as the same, by my brother Judge.

Nor does the position that "the authorities of a city could not adopt any settled system for the improvement of their streets unless the means for so doing were under their control," strike me with favor or force. And this because it is conceded, and is so true as to be perfectly undeniable, that the power to levy the tax was, under all the prior legislation, in the county officers or township trustees; and that if not taken away by the proviso it is still with the trustees. The several acts upon this subject are plain, positive and distinct. Until 1858, therefore, (covering a period of some fifteen years,) the city authorities did carry on their improvements without having the power to levy a road tax. It is possible that they might still continue to do so. But then, the fallacy of the position is found in the fact that a system for the improvement of the streets has nothing to do with the ordinary road tax.

But my dissent is placed upon the cardinal ground that the tax power should not be exercised when the right to do so is doubtful; that this proviso gives no power, confers no right, that to levy a tax no authority can be founded justifying the construction, and the proviso can have a full meaning and purpose without inferring from it a doubtful power of taxation. By construing the proviso to refer to a power in the city authorities to form and change the districts in the city; and to superintend the expenditure of the road fund therein, through a proper officer, we have purposes to which it can apply, leaving the levying of the tax where it always has been, and where it is placed by the general language of the act.

Now, if there had been any law in existence giving to the city this power, then I could readily concur in the construction given by the majority of the court. For the meaning would be natural enough, here is a law general in its nature, providing for the levying of a road tax; unless

restrained it will apply to cities and incorporated towns, as well as the country, hence the necessity for a proviso, leaving that power where by special acts it is lodged. The power never having been conferred, however, the proviso can not be regarded as a recognition of it.

Where are the words of this proviso which confer the power? How, and where is the tax to be levied by the city? What per cent may be levied for each year? Can another case be found where the taxing power has been inferred from such negative language? I know of none, and can not sanction the precedent.