# CHARLESTON

STATE v. RAMAGE *et al.*

Submitted January 20, 1915.   Decided January 26, 1915.

1. LEWDNESS—*"Lewd and Lascivious Cohabitation."*
   To constitute the crime of lewd and lascivious cohabitation together, by persons not married to each other, they must have lived together in the same house as husband and wife, that is, as if the conjugal relation existed between them, but it is not necessary that they should hold themselves out to the public as husband and wife. (p. 526).

2. SAME—*Lascivious Cohabitation—Sufficiency of Evidence.*
   Proof that defendants occupied the same house together, the woman in the capacity of house servant, sleeping at night in separate rooms, and that on one occasion she was seen to leave her room and enter his bed room in the night time, clandestinely, and remain for an hour, is not sufficient evidence to sustain a verdict of guilty. The jury can not infer from the one act of incontinence, clandestinely committed, that such acts were habitual and continuous. (p. 526).

Error to Circuit Court, Boone County.

J. B. Ramage and another were convicted of lewdly and lasciviously associating and cohabiting together, and bring error.

*Reversed and Remanded.*

*Leftwich, Burnside & Shaffer,* for plaintiff in error.

*A. A. Lilly,* Attorney general, and *John B. Morrison* and *J. E. Brown,* Assistant Attorneys General, for the State.

WILLIAMS, JUDGE:

J. B. Ramage and Maude Hunter were convicted in the

circuit court of Boone county on a charge of "lewdly and lasciviously associating and cohabiting together," and adjudged to pay a fine of $50 each, and to that judgment they were granted this writ of error.

The principal error relied on is the refusal of the court to sustain defendants' motion to set aside the verdict. The question presented is, is there sufficient evidence to support it? The following facts are proven and not controverted, viz.: that defendants are not married to each other; that J. B. Ramage is a married man not living with his wife; that he is general superintendent of the Spruce River Coal Company, and lives in its house at Ramage in Boone county; that Maude Hunter is an unmarried woman and is employed by said company at a salary of $12 a month to do the cooking, washing and general house work; that for most of the time, for a year or more previous to the indictment, she and Ramage lived in the house alone; that the house contained a number of rooms, and he occupied a bedroom on the lower floor and she one upstairs; that she was known and recognized in the community as a servant at the house, and was on the pay roll of the company; that on three or four occasions defendants were seen together, in daylight, going in the direction of the church, and to ball games; that cows, chickens and sometimes pigs were kept on the premises, and she fed them and milked the cows. The only evidence tending to prove illicit intercourse between them is the testimony of Mrs. Pilcher, Ramage's daughter, who, together with her children and her mother, Mr. Ramage's wife, visited him at Ramage, more than a year before the indictment. She tesified that she saw Maude Hunter get his clothes preparatory to starting to a baseball game, and saw him kiss her. On another occasion, during the same visit, she said Maude Hunter had been in Charleston and he had written to her to come back; that she did return, and was relating to witness and her mother, in the kitchen, why she had come back, and he came in, and "she stopped telling what was in the letter." On that night, after they had all retired, witness said she saw Maude Hunter go from her room upstairs, along the hallway and down stairs, through the kitchen, and into the door of Ramage's room, that it was then between three and

four o'clock in the morning, and that "silence reigned supreme from that time until (she) heard the stove rattle for breakfast;" which, she said, was about an hour after Maude Hunter went into his room; that when Maude Hunter left her room to go down stairs she followed her along the hall to the head of the stairway, from which place, she said, she could see her go into the door of his room. She said she saw the kissing incident through a small crack, or opening, in the steps of the stairway. She admits that she was secretly watching to discover if any improper relations existed between defendants. Both defendants denied that there was ever at any time any illicit intercourse between them, and they flatly contradict the testimony of Mrs. Pilcher. A number of witnesses testified that, in their opinion, it was not possible for Mrs. Pilcher to see the door of Mr. Ramage's room from the place on the stairway where she was standing when she says she saw Maude Hunter enter the room, because of the construction of the building; they say the line of vision is cut off by intervening objects. But it does not appear that any of the witnesses made a test of it. The evidence is conflicting and it was clearly the right of the jury to determine what the facts were. They had a right to believe Mrs. Pilcher and to disbelieve the witnesses who contradicted her. They evidently believed her and we must accept their finding of the facts.

Assuming the facts to be true, the question of law arises, are they sufficient to sustain the indictment? This court held lewd and lascivious association and cohabitation to mean "the living and cohabiting together of a man and a woman, not married to each other, in the same house, as husband and wife." *State* v. *White,* 66 W. Va. 45. That case followed *State* v. *Miller,* 42 W. Va. 215, wherein the same doctrine was announced, and in which it was also held that occasional acts of illicit intercourse did not prove a violation of the statute, although the man and woman occupied the same house. The illicit relation must be habitual and continuous. It was early held by the supreme court of Massachusetts, in construing a statute worded similar to our own, that proof of one criminal intercourse did not constitute a violation of the statute. Says the court in its opinion: "The design of

the statute, in this particular provision, was to prevent evil
and indecent examples, tending to corrupt the public morals."
*Commonwealth* v. *Calef,* 10 Mass. 153.   Mr. Bishop, in his
work on Statutory Crimes, asserts the same doctrine, and
cites that case and others to support it.   Sec. 712.   Underhill
says: "It must appear that the parties lived together openly
and notoriously as though husband and wife."   Underhill
Criminal Evidence, Sec. 384.   One or two instances of incon-
tinence are not enough.   "It is the more indecent, open, and
demoralizing example of living in adultery or fornication as
man and wife that the statute was designed to prevent."
*Pruner and Clarke* v. *Commonwealth,* 82 Va., opinion of
Judge Lewis, at page 118.   Iowa has the same kind of a
statute that exists in Virginia and in West Virginia, and
under an indictment there charging "that the defendants not
being married to each other, did lewdly and lasciviously
associate and cohabit together," it was proven that they
lived together in the same house as man and hired girl, that
they had so lived for several months; that there were but
two beds in the house; that a witness for the state and his
brother slept in one and the woman slept in the other, and the
other defendant slept on the floor; that on two occasions
defendants were seen together in the same bed.   The court
held that the evidence was not sufficient, and, in its opinion,
says: "Secret acts of intercourse would not make them liable.
The burden of the offense is the open, lewd, lacivious conduct
of the parties living together as husband and wife.   It is
the publicity and disgrace, and demoralizing and debasing
influence, that the law is designed to prevent."   *State* v.
*Marvin,* 12 Iowa 506.   That case, as well as *Commonwealth*
v. *Calef, supra,* was cited approvingly by the supreme court
of Florida, in *Luster et al.* v. *State,* 23 Fla. 339, wherein the
court of that state, in construing a statute describing the
offense in the same language as our own, held that the dwell-
ing together by the parties must be "as if the conjugal rela-
tion existed.   A single or mere occasional acts of incontinency
are insufficient to sustain the charge."   To the same effect
are *Penton* v. *State,* 42 Fla. 560; *Taylor* v. *State,* 36 Ark.
84; and *Carotti* v. *State,* 42 Miss. 334.   In a later case the
supreme court of Mississippi held that it was not necessary

that the parties hold themselves out to the community as husband and wife, "but only that they should openly and notoriously consort and live together as if they were husband and wife; that is to say, as husband and wife usually live," that so long as the illicit intercourse is secret, or attempted to be made so, the statute is not violated, "but that, whenever secrecy is abandoned and concubinage is open, the offense is complete." *Kinard* v. *State,* 57 Miss., opinion page 134. The statute of that state, however, was later amended so as to make it unnecessary to constitute the offense for the parties to dwell together publicly as husband and wife, and permitting the crime to be proven "by circumstances which show habitual sexual intercourse." *Granberry* v. *State,* 61 Miss. 440. The supreme court of Missouri also holds that clandestine acts of illicit intercourse, however frequent, do not constitute a violation of the statute which forbids a man and woman, not married to each other, from "lewdly and lasciviously abiding and cohabiting with each other." That court, citing many of the cases above cited, likewise holds that the statute was aimed to prevent acts "which necessarily tend by their openness and notoriety, or by their publicity to debase and lower the standard of public morals." *State* v. *Chandler,* 132 Mo. 155. A similar view of the California statute on the same subject is taken by the supreme court of that state. *People* v. *Salmon,* 148 Cal. 303. We note, however, that the language of the California statute differs from the language of the statutes of the other states whose decisions we have above cited; but, notwithstanding, that court has followed the decisions of the Iowa and Missouri courts, and cites approvingly their decisions.

Our conclusion is, after a careful investigation of the authorities, that the crime of lewd and lascivious cohabitation is not established by proof of a single act of illicit intercourse, clandestinely committed, although the parties charged may be living together in the same house at the time of the unlawful act, and that the jury can not presume, from proof of one such unlawful act, that the defendants habitually cohabited together as man and wife. The facts are uncontradicted, that Maude Hunter occupied the house in the capacity of servant of the coal company, although she may have been

employed by Ramage, its general superintendent, and that she and Ramage slept in different rooms. Defendants may have been guilty of adultery and fornication, but that is not the crime for which they were indicted.

In view of what we have already said, it was error to give the State's instruction which told the jury that, if they believed from all the evidence in the case, beyond a reasonable doubt, defendants had been living together "as husband and wife, within one year prior to the finding of the indictment," then they should find them guilty. There was not sufficient evidence to support the instruction. It was likewise error to refuse to give defendants' instructions Nos. 1, 3, and 4. No. 1 is a peremptory instruction to find for the defendant, and should have been given. Nos. 3 and 4 correctly state the law.

The judgment is reversed, the verdict set aside and a new trial awarded.

*Reversed and Remanded.*