## SAM HARRIS v. STATE.

No. A-1955.    Opinion Filed January 27, 1915.

(145 Pac. 759.)

1.    **LEWDNESS—Adultery—Proof.** In a prosecution for adultery, positive evidence of the direct fact is not required. The fact of carnal intercourse may be inferred from circumstances that lead to it by fair inference as a necessary conclusion.

2.    **SAME—Living in Adultery—Sufficiency of Evidence.** In a prosecution for open and notorious adultery, the evidence considered, and conviction affirmed.

3.    **SAME—Elements of Offense—"Living Together in Open and Notorious Adultery."** The courts, when called upon to determine what constitutes the state of "living together in open and notorious adultery," have defined it as the state of cohabiting. In other words, the parties must dwell together openly and notoriously, upon terms as if the conjugal relation existed between them. There must be an habitual illicit intercourse between them.

(Syllabus by the Court.)

*Appeal from District Court, Garvin County;*
*R. McMillan, Judge.*

Sam Harris was convicted of adultery, and appeals. Affirmed.

*R. T. Jones* and *Carr & Field,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *C. J. Davenport,* Asst. Atty. Gen., for the State.

DOYLE, P. J. The plaintiff in error, Sam Harris, and Eva Baker were jointly informed against and by a verdict of a jury found guilty of adultery. Said crime was alleged to have been committed by living together in open and notorious adultery. The jury fixed the punishment of plaintiff in error at a term of two years in the state penitentiary and the punishment of Eva Baker at a fine of $1. From the judgment and sentence entered against him, Sam Harris appeals.

There is but a single question presented by the record for our determination; that is, the sufficiency of the evidence to support the verdict. The evidence shows that Eva Baker was the stepdaughter of Sam Harris, who married her mother when she was about six years of age. In 1906 or 1907, Eva Baker gave birth to an illegitimate child. In December, 1911, she gave birth to another illegitimate child.

Ed Parks testified, in substance:

"I live southwest of Pauls Valley; have charge of the road camp; was formerly deputy sheriff and county commissioner. Sam Harris and Eva Baker lived together from June, 1911, until January in a house on the Taylor place; saw Eva Baker about the 1st of October, and she looked as if she would be confined in a month or two. Never saw Mrs. Harris around there."

Wash Lemmons testified that he knew Sam Harris and his family. Eva Baker and her child were living with them in 1911. Harris bought a spring crop on the Taylor place, about three miles from his home place, and moved enough furniture to keep house with, and Eva Baker went to live there. Harris spent about one-fourth of his time there; did not see Mrs. Harris there; noticed that the woman was in a delicate condition.

John McCarty testified that he had a store at McCarty, and was a farmer and stock raiser. Mrs. Harris was in the store one day and said that she and Sam had separated.

J. A. Dunn testified that six years ago Sam Harris and his family lived on his place, and Harris had another place about three miles away, where Eva Baker stayed, and Harris stayed at both places alternately; that in 1911 Harris bought the crop

on the Taylor place, and he and Eva Baker moved on and lived there for several months; that he heard all kinds of talk about them, and heard different people say they were living together as man and wife; that he heard remarks about Harris keeping two or three houses around there; and that it looked strange that these women could not all live in one house.

Pink Duncan testified to substantially the same facts.

Dr. E. Sullivan testified that he was a practicing physician; that in December, 1911, he met a woman who gave her maiden name as Eva Baker; that on a phone message he went to the Taylor place, and there delivered a woman of a child. He made a memorandum of the woman's age, maiden name, number of children, and place and date of birth; the woman gave her name as Harris; maiden name as Eva Baker; age 26 years; that the memorandum is on file at the state board of health at Oklahoma City. Sam Harris was there and said that he was the father of the child, and that the woman was his wife.

For the defense Sam Harris' sister, Allie Halstead, and her son Arthur, Sam Harris' wife, the mother of Eva Baker, and Henry Tucker, son-in-law of Sam. Harris, testified that they had never noticed any improper conduct on the part of Sam Harris and Eva Baker, or conduct indicating improper relations.

Sam Harris, as a witness in his own behalf, testified that his family consisted of his wife and six children and a stepdaughter, Eva Baker; that he was married twenty years; that when Eva Baker was twenty years old she gave birth to an illegitimate child, and that he did not know who was the author of her ruin; that six years later, on the Taylor place, she gave birth to another child; that Dr. Sullivan waited on her, and he paid him for his services. He denied stating that he was the father of the child, and denied having had improper relations of any kind, at any time, or at any place with his stepdaughter, Eva Baker.

The prosecution in this case was not commenced upon the complaint of the wife of the plaintiff in error, Sam Harris. It is insisted that the verdict and judgment is not sup-

ported by the evidence, in that there was no evidence tending to show that the defendants were "living together in open and notorious adultery." The statute in question provides that:

"Prosecution for adultery can be commenced and carried on against either of the parties to the crime only by his or her own husband or wife, as the case may be, or by the husband or wife of the other party to the crime: Provided, that any person may make complaint when persons are living together in open and notorious adultery." (Section 2431, Rev. Laws 1910).

A careful consideration of the testimony satisfies us that it cannot reasonably be said that there was no evidence tending to prove that the defendants were "living together in open and notorious adultery." In *Kitchens v. State,* 10 Okla. Cr. 603, 140 Pac. 619, it is said:

"In a prosecution for adultery, positive evidence of the direct fact is not required. To require positive evidence alone would be to give immunity to practically all offenders. Usually presumptive evidence alone is obtainable, and the fact of carnal intercourse is inferred from circumstances that lead to it by fair inference as a necessary conclusion."

The courts, when called upon to determine what constitutes the state of "living together in open and notorious adultery," have defined it as the state of cohabiting. In other words, the parties must dwell together openly and notoriously, upon terms as if the conjugal relation existed between them. There must be an habitual illicit intercourse between them. The plain and manifest purpose of the Legislature in the enactment of the provision of the Penal Code defining adultery and prescribing the manner in which prosecutions therefor may be commenced was to guard and protect the public morals by erecting barriers which vicious, lewd, and lascivious married persons may not safely pass. The object of the proviso was to prohibit the public scandal and disgrace of the living together of such persons notoriously in illicit intimacy which outrages public decency by providing that any person other than the husband or wife of either party may make complaint. In the case at bar the

defendants did, as we think the evidence shows, live together in open and notorious adultery.

It follows that the judgment should be, and the same is hereby, affirmed.

FURMAN and ARMSTRONG, JJ., concur.