CASE 75—INDICTMENT—MAY 15.

# Commonwealth v. Bessler,

APPEAL FROM CAMPBELL CIRCUIT COURT.

1. KEEPING A DISORDERLY HOUSE is a common-law offense, and to keep such a house is not an indictable offense unless it be laid as a common nuisance.

2. SAME—INDICTMENT.—The offense of keeping a disorderly house consists of a repetition of improper conduct, and to constitute a good indictment for that offense words must be used which show the repetition or frequency of the acts complained of, as that the acts were done on a day certain "and on divers other days and times," etc. It is not sufficient to allege that the acts were done "on the —— days of ——, 1894, and before the finding of the indictment."

WM. J. HENDRICK, ATTORNEY GENERAL, AND M. R. LOCKHART FOR APPELLANT.

The averment in an indictment for the offense of keeping a disorderly house, that the acts alleged to have been committed were done "on the —— days of ——, 1894, and before the finding

of the indictment," is sufficient to constitute a good indictment. (Bishop on Criminal Law, sec. 1119; Smith v. Commonwealth, 6 B. M., 21-23; Wilson v. Commonwealth, 12 B. M., 2; Mallicoat v. Commonwealth, 16 Ky. Law Rep., 359.)

BUTLER HAWKINS AND E. H. KILPATRICK FOR APPELLEE.

1. The keeping a disorderly house is a nuisance, and the offense should be laid by charging that the acts complained of were continuous or habitual.    (1 Duvall, 160; 4 Bibb, 261; Greenbaum v. Commonwealth, 10 Ky. Law Rep., 723.)
2. The charge in the indictment of a single offense is sufficient to constitute a good indictment for the offense of keeping a disorderly house. · (Smith v. Commonwealth, 6 B. M., 21; Wilson v. Commonwealth, 12 B. M., 2.)

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

A demurrer was sustained to the indictment which charged the defendant, Bessler, with keeping a disorderly house, committed as follows: "The said Philip Bessler, on the .......... days of ............·., 1894, and before the finding of the indictment in the county aforesaid, did unlawfully suffer and permit a number of persons to assemble in his barroom at Fort Thomas, in the Highlands, the same being in his occupation and under his control, and there and then to drink to intoxication and to indulge in loud, boisterous and profane language to the common nuisance of the people then inhabiting. residing and passing and repassing, and in manifest destruction and subversion of and against good morals."

The question arising on the appeal is as to the sufficiency of the indictment. Keeping a disorderly house is a common law offense, and to keep it is not an indictable offense, unless it be laid as a common nuisance.

Common nuisances are created in various ways. One act of itself might not be common nuisance, except for that

which directly flows from it, and which is of a continuing nature.

The offense of keeping a disorderly house consists of a repetition of improper conduct. The form of indictment given by Chitty, charges that the offense was on a day certain and divers other days and times, etc.   In the part of the indictment which described the acts constituting the offense it is said that the persons did "frequent and come together."

While the form of indictment which was in use under the ancient practice is no longer in use, yet the same acts which formerly constituted the offense are now required to be proved to convict one of the offense.   There must be a frequency and continuity of acts which result in producing the disorderly house, hence the nuisance.

"When it was charged that the defendants assembled at a public place and profanely and with loud voice, cursed, swore and quarreled in the hearing of divers persons then and there assembled, whereby a certain singing school was broken up and disturbed *ad commune nocumentum*, it was held that the indictment could not be sustained as one for a common nuisance."   (Archbold's Criminal Practice and Pleading, vol. 2, 995.)

In sec. 1449, Wharton's Criminal Law (9th ed.), it is said: "A disorderly house is a house kept in such a way as to disturb, annoy or scandalize the public generally, or the inhabitants of a particular vicinity, or the passers in a particular highway, and is indictable at common law."

In same work, sec. 1451, this language is used, viz.:   "But that the house was *frequented* by noisy and disreputable persons without identifying them, may be put in evidence."

The latter quotation is used to show that the matter of repetition, or frequency of the acts of disorder, etc., is an es-

sential element in the acts to constitute the offense of keeping a disorderly house.

This view is further sustained by sec. 1106, Bishop on Criminal Law (7th ed.), *defining a disorderly house,* wherein he says it is "a house or other like place in which people *abide,* or to which they *resort,* disturbing the repose of the neighborhood."

In Smith v. Commonwealth, 6 B. M., 21, and in Wilson v. Commonwealth, 12 B. M., 2, the defendants were charged with certain acts occurring on a certain day "and divers other days and times," etc., and did cause and procure men and women "to *frequent* and come together," etc.

While in these cases the question was not raised as to whether the words just quoted were essential to make the indictments good, yet the court held that the acts alleged and proved constituted the offense of keeping a disorderly house and that the defendants were guilty because they *habitually* allowed the persons to assemble, etc.

There is an entire absence of any charge in the indictment that the defendant permitted persons to assemble, etc., on divers days and times, nor are there any words or phrases used charging a repetition or frequency of the acts of disorder, etc.

To say that the defendant is guilty of the offense of keeping a disorderly house committed "on the — days of —, 1894, and before the finding of the indictment," is not sufficient.

It is too indefinite, and does not use language charging a repetition of the acts in such way as to constitute the offense of keeping a disorderly house.

The judgment is affirmed.