## CHARLESTON.

### STATE *v.* NICK BADDA.

Submitted October 14, 1924.   Decided October 21, 1924.

1. DISORDERLY HOUSE—*Common-Law Definition of "House of Ill-fame" Stated.*

   Our statute does not define the term "house of ill-fame," and it therefore becomes necessary to go to the common law for its definition, where it is said to be a house kept for the reception of persons who choose to resort to it for the purpose of illicit sexual intercourse.   (p. 418).

2. SAME—*Evidence of Disorderly Conduct and Drunkenness, and of Loitering on Premises, Insufficient to Convict of Keeping House of Ill-fame.*

   To convict one of the offense of keeping a house of ill-fame, evidence of disorderly conduct and drunkenness on the part of men and women on the premises of the defendant, and of the fact that arrests have been made there on the charge of "loitering," is insufficient.   (p. 419).

   LITZ, JUDGE, absent.

Error to Circuit Court, Mingo County.

97 W. Va.

Nick Badda was convicted of the unlawful keeping and maintenance of a house of ill-fame for the purpose of prostitution and lewdness, and he brings error.

*Reversed; verdict set aside; new trial awarded.*

*Preece & Hogg,* for plaintiff in error.

MILLER, JUDGE:

Defendant was found guilty of the offense charged in the indictment; that "Nick Badda on the ....day of July, 1923, and within one year prior to the making of this indictment, and on divers other days and times thereafter, in the county aforesaid, unlawfully did keep and maintain, a certain house of ill-lame resorted to during all that time, and now resorted to, by divers idle and dissolute persons, both men and women, for the purpose of prostitution and lewdness, against the peace and dignity of the state."

From the evidence it appears that defendant was the proprietor of a restaurant and rooming house or hotel, both located in the same building. The state's evidence consists of the testimony of three patrolmen of the city of Williamson, in which the hotel or rooming house was located. They testify that on several occasions they had made arrests in the building, for disorderly conduct, drinking, loitering, and raising sand in the rooms up stairs." One says he found both men and women up stairs in the rooming house. All say that the charges against those arrested were for loitering and disorderly conduct, or loitering alone. There is no evidence of any act of lewdness or illicit sexual intercourse. No evidence was introduced as to the character or reputation of the persons found in the place.

Our statute makes it an offense to keep a house of ill-fame, but does not define the term "house of ill-fame." This was an offense at the common law; and we must necessarily adopt the common-law definition of the term. *State* v. *Pyles,* 86 W. Va. 636. "A bawdyhouse (or house of ill fame as it is sometimes called) is a house kept for the reception of persons who choose to resort to it for the purpose of illicit sexual intercourse, and is indictable at common law." 2 Wharton's

Criminal Law, (11th ed.) 1883. ''A bawdy-house is any place, whether of habitation or temporary sojourn, kept open to the public either generally or under restrictions, for licentious commerce between the sexes. House of ill-fame is another name for the same thing.'' 1 Bishop on Criminal Law, (9th ed.) 807. See also, 18 C. J. 1240; 9 Am. & Eng. Enc. Law, 519. In *State* v. *Jones,* 53 W. Va. 613, it is said: ''It is not necessary to allege any acts of lewdness or prostitution, as the words 'keeping a house of ill-fame' implies all this under our statute.'' And it is generally held that ''bawdy house'' and ''house of ill-fame'' are synonymous terms. Bishop, p. 807; Wharton, p. 1883, note 1; 2 Brill, Cyc. Crim. Law, §1071, and cases cited in notes. These texts are fully supported by the cases cited; and except where the statute defines ''house of ill-fame,'' it is held that the common-law definition as stated above applies. Here we do not find evidence of any of the acts or conditions necessary to constitute the offense of keeping a house of ill-fame as defined at common law.

The police officers who made the arrests in defendant's place of business all testified that the charge against those arrested was ''loitering.'' The only definition of the term ''loiter'' which we find in the law books is that used by the lexicographers, ''to be dilatory, to stand idly around, to spend time idly.'' 25 Cyc. 1602; 4 Caldwell's Jud. Dict. Dig, 2660; *State* v. *Tobin,* (Conn.), 96 Atl. 312.

Finding no evidence of guilt of the offense charged, we are of opinion that the court should have sustained defendant's motion to strike the state's evidence from the consideration of the jury and to direct a verdict of not guilty.

Defendant requested the court to instruct the jury that before they could find the defendant guilty, they must find: ''(1) That the defendant was the owner, lessee, or tenant of the house described in the evidence; (2) That the said house was run as a place where prostitutes are permitted to resort and reside for the purpose of plying their vocation; (3) That prostitutes did resort and reside at said house for the purpose of plying their vocation.''

First, we do not think it necessary to prove that a person who ''keeps a house of ill-fame'' is the owner, lessee or tenant

of the property. One might be responsible for the conduct of persons frequenting such place whether he was owner, lessee, tenant, or not. Wharton, p. 1889. Second, those who resort to such a house need not be prostitutes, nor need they reside there.

The judgment will be reversed, the verdict of the jury set aside, and the defendant awarded a new trial.

*Reversed; verdict set aside; new trial awarded.*