## 29841. PIRKLE v. THE STATE.

DECIDED SEPTEMBER 25, 1942.

*E. C. Brannon,* for plaintiff in error.

*G. Fred Kelley,* solicitor-general, *J. E. Frankum,* contra.

GARDNER, J. The accused was convicted on an indictment which contained two counts. The first count charged that "he did maintain and keep a lewd house for the purpose of fornication or adultery," under the Code, § 26-6102. The second count charged him with a violation of § 26-6103, in that he did "keep

and maintain a common, ill-governed and disorderly house, to the encouragement of idleness, gaming, drinking and other misbehavior, and to the common disturbance of the neighborhood and orderly citizens." He filed a motion for new trial which was overruled and he excepted.

The evidence disclosed that the accused operated a place of business in the City of Gainesville, across the street from the police station. He sold sandwiches, cold drinks, beer, and wine. In the place the accused operated a nickelodeon or "jook organ" in the front of the building. The front contained tables, booths, and a space for dancing. Immediately behind the front room was the kitchen; behind the kitchen was another room. The accused had once maintained the back room as living quarters for himself and wife. It did not appear that there was any furniture of any kind in the back room, no cots or beds. The accused employed from three to five girls. The jook-organ sounding device was so geared that the volume of the sound disturbed the merchants on either side of the building occupied by the accused, and other near-by places. Dancing, loud noises, and congregation of people in the building and immediately in front of it on the sidewalk, were carried on to the great annoyance and disturbance of orderly citizens of the city. There was at least one incident of figthing; a number of drunken men were arrested regularly in and about the place; and, as one witness put it, the people would crowd up to and around the building "like peeping up to see a circus parade." Practically all of the evidence was to the effect that the reputations of the girls employed there were bad for lewdness; that men whose reputations were bad for lewdness, prostitution, and promoting prostitution, frequented the place; that it was a gathering place for lewd women from other near-by towns and places. Obscene and indecent contact according to the testimony of a number of policemen, were indulged in by the girls employed at the place and visiting men of equally bad reputation. In addition to the bad reputations for lewdness of the people who commonly and frequently visited the place, it also had the reputation of being a lewd place and a disorderly place. Such, generally and briefly, was the evidence.

1. As to count 1, there was not sufficient evidence to sustain the verdict of guilty. Under this section of the Code it is not

enough to prove the reputation for lewdness of the house and inmates. There must be some further evidence to establish the house as one contemplated by the provisions of Code § 26-6102. As was said in *Ward* v. *State,* 14 *Ga. App.* 110 (80 S. E. 295) : "To authorize a conviction in a prosecution for the offense of keeping a lewd house, it is not enough to prove the general reputation of the house, or of its inmates, or both; for the gist of the offense is that the house was kept for the practice of fornication or adultery, and the jury must be satisfied that acts of lewdness were practiced in it, and that it was maintained for the purpose of prostitution. The reputation of the inmates of the house for lewdness may be a circumstance to be considered by the jury, as tending to show the continuing character of the offense and in corroboration of other evidence of the essential fact that fornication or adultery was actually committed at the house. But proof of reputation for lewdness on the part of inmates of a house, without more, no more establishes the fact that the house in question is a lewd house, within the terms of the statute, than proof that the inmates of another house had a good reputation for virtue would disprove positive evidence that the house was used for purposes of prostitution." See also *Wilkes* v. *State,* 23 *Ga. App.* 727 (99 S. E. 390). This ruling disposes of all assignments of error as they relate to count 1, maintaining and keeping a lewd house. The judge erred in not granting a new trial as to count 1, for there was not sufficient evidence in corroboration of the reputation of the house and its inmates to sustain the verdict of guilty under this count.

2. Grounds 1 and 2 of the amended motion assign error on the admission of testimony. The first complaint is that the court should have excluded testimony as to the crowds of people in front of the accused's place of business. We do not think this objection well taken. The evidence tended to establish the fact that the disorderly congregation of the people inside the defendant's place of business caused those on the outside to congregate like "peeping at a circus parade," and caused disturbances to orderly citizens. The second ground complains that the court erred in permitting a witness to testify that one John Newberry, who had a bad reputation for hauling women of bad reputation around, hauled women to and from the defendant's place of business. It

is argued that this evidence was irrelevant, immaterial, and prejudicial. This evidence was certainly admissible under the allegations of count 1, and in view of all the testimony we do not think it was prejudicial regarding the charge in count 2.

In ground 3 it is complained that the court erred in excluding testimony of the chief of police of Gainesville brought out on cross-examination as follows: "We do all we can to help them run it right. We never had any complaint about what he was doing. . . In other words, as far as he [defendant] was concerned, he was trying to help you folks operate his business right." The court did not err in excluding this testimony. It evidently called for a mere conclusion of the witness. Upon examination of this witness the court permitted him to go into the facts. There was little variance between what was admitted and what is here objected to.

Ground 4 complains of a question propounded by the court. The court was inquiring as to the size of the defendant's place of business and the number of girls it would regularly take to conduct such an ostensible business properly. During the questioning one of the witnesses stated that a part of the duty of the girls was to get nickels to go into the jook organ. The judge inquired as to what other duties were imposed on the girls. The answer was: "I reckon they make sandwiches and sell beer and wine." It is contended that this question on the part of the court was in itself suggestive, and by inference amounted to an expression of opinion, and was improper and reversible error. This ground is not well taken.

Ground 5 complains because the court permitted a police officer to testify as to how many cases and arrests were made from the place of business of the accused, on the ground that the record was the highest and best evidence. When the objection was made the court inquired as to the whereabouts of the record. The witness responded that he had it there in court. No further ruling was made. The witness proceeded to testify as to the number of cases. The record was not introduced in evidence. Technically it would have been proper for the record to be introduced, but in view of the whole evidence and the testimony of a number of other witnesses along this same line we do not think this error demands a reversal.

Ground 6 complains because the court charged the jury that they might take into consideration the reputation of the house and of the inmates. It is contended that this was confusing to the jury for the reason that it was not applicable to count 1 and was erroneous as an abstract principle of law. In so far as the error relates to count 1 we need not discuss it, since we are reversing the judgment as to this count. As to count 2 it was permissible to show that "the house in question had the general reputation of being a common disorderly house." We think it would likewise follow that the bad reputation of the inmates of the house and of those who regularly and commonly visited there was admissible as indicating that the house, where they so regularly and commonly visited and promoted the disturbances, as shown by all the evidence in this case, was a disorderly house. See *Martin* v. *State,* 62 *Ga. App.* 902 (10 S. E. 2d, 254).

Ground 7 applies exclusively to charges to the jury under count 1.

Ground 8 complains of an excerpt from the charge of the court. Under the evidence, when the charge is considered as a whole there is no merit in this assignment.

Ground 9 complains that the court failed to charge the law of circumstantial evidence as applied to count 1. Since we are reversing the conviction under count 1, there is no merit in this ground as it applies to count 2.

3. The evidence abundantly sustained the verdict of guilty under count 2 of the indictment. *Martin* v. *State,* supra.

*Judgment reversed in part and affirmed in part. Broyles, C. J., and MacIntyre, J., concur.*