STATE OF WEST VIRGINIA

*v.*

LILLIAN CRUMMITT

(No. 9774)

Submitted On Rehearing September 11, 1946. Decided December 10, 1946.

*Fred L. Shinn,* for plaintiff in error.

*Ira J. Partlow,* Attorney General, *Ralph M. Hiner,* Assistant Attorney General, *Eston B. Stephenson,* Special Assistant Attorney General and *J. Philip Clifford,* Prosecuting Attorney, for defendant in error.

HAYMOND, JUDGE:

The defendant, Lillian Crummitt, was convicted before a justice of the peace of Harrison County, West Virginia, for the crime of keeping, maintaining and operating a place of prostitution. She appealed to the Criminal Court of Harrison County and upon a verdict of guilty she was sentenced to confinement in jail for one year and to pay a fine of $250.00. The Circuit Court of Harrison County refused to review the judgment of the Criminal Court, and the defendant was granted a writ of error and supersedeas by this Court.

The warrant, dated September 18, 1944, upon which the defendant was arrested and tried, charges that the defendant "* * * on the ——— day of ————————, 1944, in the said County, did knowingly and unlawfully keep, maintain and operate a place of prostitution in that certain place, building and house, on the south side of Werninger Street, known as 609 Werninger Street, in the City of Clarksburg, in said County, against the peace and dignity of the State."

The principal witness for the State testified that on September 2, 1944, at about the hour of 9:45 P. M., he walked down Werninger Street and as he passed house No. 609 he saw the defendant and two other women sitting on the porch; that as he walked by the house the defendant asked him where he was going; that he stopped at the fence, which was practically against the porch,

and talked for a short time and that he was asked to come in and go upstairs with one of the women for the purpose of prostitution; that he inquired as to the price and was told that it "would be all right"; and that he then excused himself, saying he wanted a drink and would come back, but that he did not return. On cross examination the witness testified that he did not go in the house or on the porch; that no men went in and that he saw no signs of disorder or "signs of prostitution being carried on there". He identified the other two women who were with the defendant at that time, and they, together with the defendant, were arrested at her home on September 19, 1944. The arresting officer testified that at the time he arrested the defendant and the other two women one of the latter remarked, in the presence of the defendant, that "* * * she knew she could not get away with this forever and she expected a raid of this kind." The officer further testified that at the time of the arrests no men were at the house; that no vulgar remarks were made; and that the women went upstairs to change their clothing. Two other witnesses, a deputy sheriff of Harrison County and a member of the detective force of the city, testified that No. 609 Werninger Street had a bad reputation for being a house of prostitution for a period of eight years or more. One of these witnesses testified that he had arrested the defendant for operating a house of prostitution. The foregoing is all the material evidence offered by the State in support of the charge.

The defendant denied all the statements of the principal witness for the State and also denied that she had ever seen him prior to the hearing before the justice of the peace on the instant charge; that neither of the other two women was at her home on September 2, 1944; that at no time had she operated a house of prostitution; that at no time had any person been there, or been solicited to come there, for that purpose; and that she had not been arrested during the time that she resided at that place. On cross examination she admitted having been

arrested twice between the years 1938 and 1942, which was prior to her occupancy of 609 Werninger Street.

The other two women arrested with the defendant testified that they were not in Clarksburg on September 2, 1944, but admitted that they were at the house of the defendant on September 19, 1944, the date of their arrest, as overnight guests of the defendant; and that neither had seen the principal witness for the State prior to the hearing before the justice of the peace. The woman alleged to have made the statement with reference to a raid denied that she made that statement.

The proof offered by the State is limited to one instance of solicitation to engage in illicit intercourse; the general bad reputation of the house; and the statement made by one of its alleged inmates, from which statement an inference may be drawn amounting to a confession of some criminal act.

The defendant assigns a number of errors, but a discussion of the sufficiency of the warrant on which she was tried, and the evidence on which she was convicted, is sufficient to dispose of all assignments.

The contention of the defendant is that the warrant is bad and that her motion to quash it should have been sustained on the following grounds: (a) That it alleges conclusions rather than facts; (b) that it fails to contain the phrase incorporated in the statute "for the purpose" of prostitution; and (c) that the warrant does not sufficiently describe the offense to enable her to avail herself of the judgment in the event of a subsequent prosecution.

The pertinent parts of the statute alleged to have been violated by the defendant are: "Any person who shall keep, set up, maintain or operate any house, place, building, * * * other structure, * * * for the purpose of prostitution, lewdness, or assignation; * * * shall, upon conviction for the first offense under this section, be punished by imprisonment in the county jail for a period of not less than six months nor more than one

year, and by a fine of not less than one hundred dollars and not to exceed two hundred fifty dollars, * *". Chapter 30, Article 8, Section 5, Acts of the Legislature, 1943, Regular Session. Another part of the same statute confers concurrent jurisdiction on justices of the peace to try persons charged with its violation.

A warrant charging an offense of which a justice of the peace has jurisdiction to try and pronounce judgment stands in place of a presentment or an indictment and the offense must be charged with the same particularity as in a presentment or an indictment. *State* v. *Harr,* 77 W. Va. 637, 88 S. E. 44. As indicative of the frequent application of the rule announced in the *Harr* case, see *State* v. *Knight,* 119 W. Va. 6, 191 S. E. 845; *O'Donnell* v. *Shipman,* 113 W. Va. 274, 167 S. E. 700; *Hartford* v. *Davis,* 107 W. Va. 693, 150 S. E. 141; and *State* v. *Harless,* 105 W.Va. 480, 143 S. E. 151. That rule is applicable to this case.

Prior to the adoption of the Code in 1931, the statute with reference to the offense here charged read: "If any person keeps a house of ill fame he shall be guilty of a misdemeanor and fined not exceeding two hundred dollars, and may, at the discretion of the court, be confined in the county jail not exceeding one year * * *". Section 10, Chapter 149, Code, 1923. The offense was not defined in the statute, and this Court in dealing with the statute held that resort must be had to the common law for a definition of such house. *State* v. *Pyles,* 86 W. Va. 636, 104 S. E. 100; *State* v. *Badda,* 97 W. Va. 417, 125 S. E. 159. The present statute defines one kind of house of ill fame, but, being penal, the common law definition cannot be judicially enlarged. *State* v. *Pyles,* 86 W. Va. 636, 104 S. E. 100. In the *Badda* case this Court quoted with approval two definitions of a house of ill fame: " 'A bawdy-house (or house of ill fame, as it is sometimes called) is a house kept for the reception of persons who choose to resort to it for the purpose of illicit sexual intercourse, and is indictable at common law.' 2 Wharton's Criminal Law, (11th Ed.), page 1883. 'A bawdy-

house is any place, whether of habitation or temporary sojourn, kept open to the public either generally or under restrictions, for licentious commerce between the sexes. House of ill-fame is another name for the same thing. ' 1 Bishop on Criminal Law, (9th Ed.), 807." A house kept for public resort in which acts of prostitution are committed may also be described as a house of ill fame. "Bawdy house", "brothel" and "house of prostitution" are practically synonymous. The legislature in enacting Chapter 30, Article 8, Section 5 (a), .Acts, 1943, Regular Session, describes an offense similar to that described in Section 10, Chapter 149, Code, 1923. The allegation in the warrant charging the defendant with keeping, maintaining and operating a place of prostitution implies that acts of lewdness and prostitution were committed in the house described in the warrant. *State v. Jones*, 53 W. Va. 613, 45 S. E. 916. The warrant does not allege conclusions and is not objectionable for that reason.

The warrant is dated September 18, 1944, and it charges that the defendant "on the ———— day of———— ———————————, 1944," kept, maintained and operated a place of prostitution. It sufficiently alleges that the offense was committed within one year prior to the date of the warrant. *State* v. *Thompson*, 26 W. Va. 149. Generally an allegation of time in a warrant or an indictment charging a misdemeanor is unnecessary, except to show that the offense is not barred by the statute of limitations and that it was committed prior to the issuance of the warrant or the finding of the indictment.

In charging a statutory offense, it is unnecessary to follow the exact words of the statute. A warrant charging such offense is sufficient if it substantially follows the language of the statute, or charges the offense in words equivalent to, or of the same import as, the words in the statute, if it fully informs the defendant of the particular offense charged and the court can determine the statute on which the charge is founded. *State* v. *Jones*, 53 W. Va. 613, 45 S. E. 916; *State* v. *Wimmer*,

117 W. Va. 498, 186 S. E. 133; *State* v. *Nazel,* 109 W.Va. 617, 156 S. E. 45; *State* v. *Brown,* 101 W. Va. 160, 132 S. E. 366; *State* v. *Hudson,* 128 W. Va. 655, 37 S. E. 2d 553; 27 Am. Jur., Indictments and Informations, Section 101; and 27 C. J. S., Disorderly Houses, Section 11 (b). Even if it should be implied that keeping a "house of prostitution" is not synonymous with keeping a "house for the purpose of prostitution", it is nevertheless plain that the warrant in that respect substantially follows the provisions of the statute, and that no reasonable or practical distinction can be drawn between the two phrases.

This defendant is charged with a crime created and described by statute. The charge laid in the warrant substantially follows the language of the statute. The words "kept, maintained and operated", as used in the statute, import continuity of action and conduct, and, as used in the warrant, they supply the continuing element necessary for the description of the offense. Chapter 30, Article 8, Section 5, Acts of the Legislature, 1943, Regular Session.

Code, 62-9-21, provides a form of indictment for keeping a house of ill fame which does not include an allegation of a formal *continuando.* The enactment of that statute antedates the passage of the Act of the Legislature of 1943, Regular Session, upon which this prosecution is based. Although this earlier statute is not controlling, it may be considered as persuasive authority for the conclusion that the warrant in this proceeding, which omits such an express allegation, meets the statutory and constitutional requisites of a valid warrant.

There are cases which hold that the allegation of a formal *continuando* is not necessary in an indictment or an information which charges a continuing offense. See *Spencer* v. *State,* (Criminal Court of Appeals of Oklahoma), 169 P. 270; *Jackson* v. *State,* 31 Ala. App. 212, 14 S. 2d 593; 27 Am. Jur., Indictments and Informations, Section 72. Though due recognition should be

accorded to such decisions, the pertinent provisions of the statute, Chapter 30, Article 8, Section 5 (a), Acts of the Legislature of 1943, Regular Session, properly construed and applied, justify the conclusion that the offense charged in the warrant is adequately stated and described. For this reason the motion to quash the warrant was properly overruled.

The sufficiency of the evidence to support the verdict of the jury is challanged. Aside from the reputation of the house in which the defendant lived, her arrest twice previously and payment of a fine, and the statement allegedly made by one of the women arrested with her relative to a raid, the only evidence introduced by the State shows one instance of solicitation to engage in illicit sexual intercourse. In cases of this kind proof of the *corpus delicti* may be had by circumstantial evidence; but, " To convict of crime by circumstantial evidence, it is an inflexible rule that the *corpus delicti* be first proven by direct evidence, or by cogent and irresistible grounds of presumption." *State* v. *Harrison,* 98 W. Va. 227, 127 S. E. 55. The same principle was approved by this Court in the case of *State* v. *Koontz,* 117 W. Va. 35, 183 S. E. 680, wherein Judge Maxwell, in speaking for the Court, quoted with approval a statement from Will's Law of Circumstantial Evidence, page 392: " ' * * * No universal and invariable rule, therefore, can be laid down; and every case must depend upon its own particular circumstances; and, as in all other cases, the *corpus delicti* must be proved by the best evidence which is capable of being adduced, and such an amount and combination of relevant facts, whether direct or circumstantial, as establish the imputed guilt to a moral certainty, and to the exclusion of every other reasonable hypothesis. ' " See *State* v. *Gill,* 101 W. Va. 242, 132 S. E. 490.

A single act of sexual intercourse does not constitute the house, in which the defendant lived, a house of prostitution. *Wilson* v. *State,* 17 Ala. App. 307, 84 So. 783. Neither does one instance of solicitation have that

effect. Evidence of the reputation of the house standing alone is not sufficient to sustain a conviction. *Pirkle* v. *The State*, 68 Ga. App. 52, 22 S. E. 2d 104. The reputation of the defendant alone is insufficient to sustain a verdict of guilty. *People* v. *Belcastro*, 356 Ill. 144, 190 N. E. 301. Evidence of the reputation of the house, the payment by the defendant of a fine, the alleged statement of one of the women, and one instance of solicitation to engage in illicit sexual intercourse do not, when considered together, amount to the high degree of proof required to establish the *corpus delicti*. *State* v. *Harrison*, 98 W. Va. 227, 127 S. E. 55; *State* v. *Koontz*, 117 W. Va. 35, 183 S. E. 680. Though the evidence of the State shows strong circumstances, they do not reach the degree of certainty required. Upon consideration of all the evidence adduced by the State, it is clear that the verdict is not sustained by the proof. A conviction based on mere suspicion, however strong, of the guilt of the accused, can not stand. The burden rests upon the State to prove the guilt of one accused of crime not merely by a preponderance of the evidence, but by evidence sufficient to establish his guilt beyond a reasonable doubt. This requirement has not been met or satisfied in this case, and the verdict of the jury, being without sufficient evidence to support it, should have been set aside by the trial court. *State v. Hudson*, 128 W. Va. 655, 37 S. E. 2d 553.

The case of *State v. Johnson*, 189 Minn. 546, 250 N. W. 366, cited by the State, has been examined and considered; but it is not regarded as a decision of persuasive force or an authority to be followed by this Court.

In as much as the evidence is not sufficient to support the verdict of guilty, the judgments of the Circuit and Criminal Courts of Harrison County are reversed, the verdict is set aside, and the defendant is awarded a new trial.

*Judgments reversed;*
*verdict set aside;*
*new trial awarded.*

I concur in the reversal of the judgments of the Circuit and Criminal Courts of Harrison County on the ground that the evidence was not sufficient to sustain the verdict, but I do not agree that the warrant constituted a valid charge of the crime. The sufficiency of the warrant, being the one on which the accused was tried, is to be tested by the same rule as that applicable to an indictment, as is indicated in the majority opinion. Testing it by that rule, I do not believe it is sufficient. We are here concerned with the description of the offense charged, and the rule with reference thereto has been stated as follows: "The object of an indictment is twofold. It must furnish a description of the offense charged, so that the accused may know what he is required to answer, and prepare for his defense, and, if convicted or acquitted, avail himself of the judgment upon another prosecution for the same offense." *State* v. *Wohlmouth*, 78 W. Va. 404, 407, 89 S. E. 7. At common law it was necessary to allege the exact time of the act, but that rule has been modified by statute. "No indictment or other accusation shall be quashed or deemed invalid * * * for omitting to state, or stating imperfectly, the time at which the offense was committed, when time is not of the essence of the offense. * * *." Code, 62-2-10. Time is not of the essence of the offense here charged. *State* v. *Defour*, 123 Minn. 451, 143 N. W. 1126. True, the offense may be committed at any time but continuity of defendant's conduct or acts is an inherent element in the crime and a necessary part of the description thereof. The rule with reference to the essential element of time applies to the commission of the offense and not to the description thereof. Where an offense may be committed by doing one overt act, time does not enter into the description of the offense. In the instant case a different situation exists. A house where acts of sexual intercourse are indulged in by the sole occupant thereof is not a house of prostitution. *State* v. *Pyles*, 86 W. Va. 636, 104 S. E. 100. A single act of illicit sexual inter-

course in a house is not sufficient to make it a house of prostitution. *Wilson* v. *State,* 17 Ala. App. 307, 84 So. 783. One instance of resort to a house for the purpose of prostitution likewise is insufficient. *State* v. *Gill,* 150 Iowa 210, 129 N. W. 821; *Herzinger* v. *State,* 70 Md. 278, 17 A. 81. One meeting of lewd women and men at a house for the purpose of prostitution does not show the house to be one of public resort. *State* v. *Seba,* (Mo. App.), 200 S. W. 300. The offense here charged involves a series of acts or a continuing course of conduct rather than a single overt act.

At common law a bawdy house or house of prostitution was treated as a common nuisance. II Chitty's Blackstone, Fourth, page 126. Section 5, Article 8, Chapter 30, Acts of the Legislature, 1943, Regular Session, did not describe the offense, but simply provided a punishment for setting up, maintaining and operating one kind of disorderly houses. Essentially the crime remained as at common law, although a penalty is provided by statute.

If the acts or course of conduct constituting the offense are continuing, the warrant or indictment need not fix the exact date on which the offense was committed, but the continuing nature of the acts should be laid in the warrant in some manner. *Commonwealth* v. *Bessler,* 97 Ky. 498, 30 S. W. 1012; 1 Wharton's Criminal Procedure, 10th Ed., 714. An indictment charging the defendant with keeping and maintaining a house of ill fame on the ——— day of the month prior to the finding of the indictment *"and on divers other days and times thereafter",* has been approved as sufficient. *State* v. *Jonés,* 53 W. Va. 613, 45 S. E. 916. See *Commonwealth* v. *Myers,* 21 Ky. Law Rep. 1770, 56 S. W. 412; *People* v. *Russell,* 110 Mich. 46, 67 N. W. 1090; Bishop on Directions & Forms, Section 780, *et seq.*; 27 C. J. S., Disorderly Houses, Section 11; *The King* v. *Keeping,* 34 Nova Scotia 442. The continuing element inherent in the crime itself is not alleged in the warrant here considered.

As stated in the opinion of the majority, the allegations of the warrant are sufficient to take it out of the statute of limitations, but I think it goes no farther. If the defendant had been called upon to answer the identical warrant at some time later in the year 1944, could she avail herself of her former conviction on the warrant here considered? I think not. She would have no way of asserting prior to presentation of the State's evidence whether she was being tried for the identical offense here charged or another.

The warrant failing to charge the continuing element inherent in the crime is fatally defective. The offense is not sufficiently described, nor would a judgment pronounced on the warrant enable the defendant to rely thereon for protection from subsequent prosecution. In my opinion, the ruling of the court on the motion to quash the warrant was error.

I admit that there is a division of authority on the necessity of alleging a *continuando* in an indictment or warrant charging a continuing offense, but I think that having regard to the constitutional requirement that "the accused shall be fully and plainly informed of the character and cause of the accusation", the Legislature is without authority to provide by statute that an essential part of the description of the crime may be omitted. Article III, Section 14, Constitution of West Virginia.

For the foregoing reasons I do not agree with the rule stated in the first point of the syllabus of the Court's opinion.

I am authorized to say that Judge Kenna concurs in the views expressed herein.

FOX, JUDGE, dissenting:

This case has an unusual history. It was first submitted to this Court at the January term, 1946, and decided on March 3 following. The two questions involved, then as now, were: (1) The sufficiency of the warrant on which defendant was convicted, and (2) the evidence upon which such conviction was had. The majority of

the Court, one Judge dissenting, held that the warrant was insufficient, because it failed to charge the continuing element inherent in the offense alleged, and was fatally defective; and also held that the evidence produced at the trial was insufficient to sustain the jury's verdict. A petition for rehearing was filed by the State, a rehearing granted, and the case again argued at the present term. The majority opinion now being handed down holds that the warrant on which defendant's conviction rests is valid and sufficient; but four Judges adhere to their original opinion that the evidence produced at the trial was insufficient to sustain the jury's verdict. I find myself in the position of concurring in the majority holding on the warrant, and dissenting from the conclusion of the majority that the evidence is insufficient to sustain the verdict. I would sustain the verdict of the jury and judgment of the Criminal Court of Harrison County and the order of the Circuit Court of said county upholding the same.

While, as above stated, I concur in the ruling of the majority on the warrant here involved, I desire to comment on the reasons which I think sustain the majority opinion on that point, as announced by Judge Haymond. The pertinent part of the warrant in question charged that, "* * * she, the said Lillian Crummitt, on the ———— day of ————, 1944, in the said County, did knowingly and unlawfully keep, maintain and operate a place of prostitution in that certain place, building and house, on the south side of Werninger Street, known as 609 Werninger Street, in the City of Clarksburg, in said County against the peace and dignity of the State." The statute under which this prosecution was instituted is Article 8, Chapter 30, Acts of the Legislature, 1943, and the pertinent provision thereof reads: "Any person who shall keep, set up, maintain or operate any house, place, building, hotel, tourist camp or other structure or part thereof, vehicle, trailer, or other conveyance for the purpose of prostitution, lewdness or assignation," shall upon conviction, be punished in the manner provided in

said article. It is clear that the warrant uses the words of the statute, except as to matters admittedly immaterial; and, generally speaking, in making a charge of crime, the use of the words employed in the statute is sufficient, although it is fair to say that in some instances this rule does not apply, and a more definite description of the offense charged is necessary.

What is said in the statute about the "continuing element inherent in the crime"? Nothing. The statute makes it an offense to "keep, set up, maintain or operate * * * for the purpose of prostitution, lewdness or assignation", any house, hotel, vehicle or structure mentioned therein. That and nothing more. Our statute prescribes a form for an indictment under the section quoted above. Code, 62-9-21. The language used in the form prescribed is: "That ——————— on the ——— day of ————, 19 ———, in said County of ————, and within one year before the finding of this indictment, did unlawfully keep and maintain a certain house of ill fame, house of assignation, or house of like character, resorted to for the purpose of prostitution and lewdness against the peace and dignity of the State." The Legislature evidently did not deem it necessary to put into this suggested form any reference to a continuation of the offense charged, and it is fair to assume that it believed that the words " * * * keep, set up, maintain or operate" carried with them the implication that the offense prohibited was a continuing one. It is pointed out, and correctly so, that a warrant partakes of the same nature as that of an indictment, and that the crime charged therein must be defined with the same particularity as in an indictment. It must be admitted, I think, that the form prescribed for an indictment for this offense indicates the legislative intent that the so-called continuing element inherent in the crime need not be specifically charged in an indictment; and, of course, not in a warrant. At this point it is pertinent to inquire how long does a person have to operate a house of prostitution to become amenable to the penalities provided for in the statute? If the continuing element is important,

either the Legislature, or perhaps the courts, should give some indication, or set up some standard, from which persons engaged in that pareticular avocation may know just how far they can go before they become subject to the penalties prescribed by the statute.

The question has been considered in other jurisdictions. In *State* v. *Coleman,* 130 Fla. 410, 177 So. 725, it was held that, "An information charging that accused in a certain county and on a certain date, unlawfully kept and operated a house of ill fame resorted to for prostitution and/or lewdness contrary to the statute and against the peace and dignity of the state, was sufficient to charge offense denounced by the statute and advised accused fully of the nature of the crime charged." In *State* v. *Lawson,* 239 Mo. 591, 145 S. W. 92, it was held: "An offense continuous by nature may be charged as of one day and proved as a continuing offense, provided abatement is not directly sought, and fragments of a formal continuando appearing in the indictment may be treated as surplusage."; and further, "The offense of setting up and keeping a gaming device may be prosecuted as a continuing one; the word 'keep' itself containing the idea of continuity." In 27 Am. Jur., 635, it is stated: "In the case of an indictment for an offense continuous in its character, however, and not implying a single act or any given number of acts, the use of a general term descriptive of the offense is sufficient without setting out the facts which enter into the composition of the particular offense charged." See also *Spencer* v. *State,* 14 Okla. Cr. 178, 169 P. 270. Of interest in this connection are the two cases of *State* v. *Emblem,* 44 W. Va. 521, 29 S. E. 1031; and *State* v. *Jones,* 53 W. Va. 613, 45 S. E. 916. In the *Emblem* case, Judge Brannon in a dissenting opinion discussed certain features of the question; and in the *Jones* case Judge Dent indicates views which I think are in harmony with those here contended for.

The warrant issued on the 18th of September, 1944, charges that defendant " * * * on the ———— day of ———————, 1944", committed the offense charged. Proof

that the offense so charged was committed on any day in the year, 1944, prior to September 19, would have been sufficient, and proof of the offense on different dates would have been admissible; but the State, on defendant's motion therefor, would have been required to elect as to the particular date of the offense relied on for conviction, the effect of which would have been to center the prosecution of the case on a particular offense. The evidence relating to other offenses could not have been considered, except perhaps on the theory, scheme or plan. How then can it be said that the warrant must, in express terms, have charged a continuing offense, when any conviction thereunder must rest on a single and isolated offense committed on a particular date? Is it required that a warrant or indictment must charge something not necessary to a conviction? I contend that a showing that house of prostitution is maintained for only one day is sufficient. The offense which the statute seeks to punish is that of "keeping, setting up, maintaining or operating" a house for the purpose of prostitution. Of course, a number of elements enter into proving a charge that a house is kept and maintained for that purpose; but this may be done by either direct or circumstantial evidence; and when once established it is not necessary to prove more than that it was so kept and maintained for a single day.

Cases cited to support the minority view as to what constitutes a house of prostitution or a house of ill fame, have no proper application to the legal question of the sufficiency of the warrant. They are applicable to the question of fact involved, whether, on the proof presented, the defendant did keep, set up, maintain and operate a place of prostitution at 609 Werninger Street, in the City of Clarksburg, at any time in the year 1944, prior to September 19, a question of fact which the jury had a right to determine, subject to the action of the trial court, and this Court.

It has been contended that the warrant does not charge the offense in language which would protect defendant against other prosecutions for the same offense. This fear is purely imaginary. No attorney practicing at the bar of any court in this State would find any difficulty in protecting his client against such a danger. If it be a danger, it arises in every case where an indictment alleges that an offense has been committed on a day not specifically stated. The protection to defendant lies in the fact that the State will always be required to rely upon an offense committed on a day certain, and a showing that he has been convicted or acquitted of such a charge precludes any further prosecution therefor. The charge on which a conviction is had must be isolated and separated from all other offenses in such a way as to make it impossible to convict and punish a person twice for the same offense. So far as I know, no such conviction has ever occurred in this State, and I do not think it can occur. In my opinion, to reach into the air and draw therefrom such a theory and fear, passes all reasonable concepts of anything that can or may happen in this world, where reality and practicality rule in the affairs of men, and should so rule in the administration of our criminal law.

On questions of fact, the defendant is entitled to the benefit of all reasonable doubt, and the jury was so instructed. During the years efforts have been made to torture the expression "reasonable doubt", and make it mean something beyond what its terms imply. It is, in all truth, indefinable; and yet the search for an interpretation of its meaning, under which persons convicted of crime, in a fair trial, may be released, continues. Not being satisfied with according to defendant the protection accorded her under the rule of reasonable doubt, the majority brings to her assistance our ruling in *State v. Harrison*, 98 W. Va. 227, 127 S. E. 55, wherein it was held: "To convict of crime by circumstantial evidence, it is an inflexible rule that the *corpus delicti* be first proven by direct evidence, or by cogent and irresistible

grounds of presumption." I question whether a resort to circumstantial evidence is necessary in this case; but aside from this, where is the lack of cogent and irresistible grounds which point to the guilt of defendant? The established facts furnish the answer. The defendant, at the time she was arrested under the warrant in this case, had lived at 609 Werninger Street in Clarksburg for two years. She had, before moving to Werninger Street, been twice arrested on the charge of keeping a house of prostitution. On September 2, 1944, the prosecuting witness, one Koester, an undercover man from another city in this State, while walking along Werninger Street, and passing No. 609, was accosted by defendant from the porch of her residence. Two other women were sitting with defendant on her porch. According to Koester in his evidence, at the trial, this is what occurred:

"Q. In this particular case against this particular defendant, Lillian Crummit, will you tell the jury, in your own words, what occurred and when they occurred?

"A. On September 2, 1944, at 9-45 P. M., I walked down Werniger Street and came to house No. 609 and three women were sitting on the porch, with the porch light on, and as I walked by I was spoken to and asked where I was going.

"Q. Do you know which one of the women first spoke to you?

"A. Yes, sir.

"Q. Which one was it?

"A. This lady here.

"Q. You are pointing to the defendant, Lillian Crummitt?

"A. Yes, sir.

"Q. Go ahead.

"A. I stopped at the fence, which was practically against the porch — the porch run out to the sidewalk and there was a fence there — and I stopped and talked for a short time and was asked to come in and go up stairs with one of the girls.

"Q. For what purpose?

"A. For the purpose of prostitution.

"Q. Did you make any inquiry as to the price?

"A.  I did.
"Q.  What did they say.
"A.  They told me the price would be all right.
"Q.  Then what did you do?
"A.  I made the excuse I was going down to look for a drink first and I would be back.
"Q.  Having obtained that evidence you didn't go back?
"A.  No, sir."

At the trial he pointed out two women present in the court room as being the same women who were on the porch with defendant on September 2. Later, on September 19, 1944, the warrant in this case was executed. The defendant, and, strange to say, the two women who were with her on her porch on September 2, were found at No. 609 Werninger Street, and all three were arrested. At the time of their arrest, one of them, not the defendant, said to one of the officers that "She knew she couldn't get away with this forever, and that she expected a raid of this kind." Of course, defendant and the two women at her house on the two occasions mentioned deny each and every statement which might in any way incriminate defendant; but the jury was not required to believe them, and evidently did not. In addition to this, the bad reputation of the house occupied by defendant was shown by admissible testimony. Section 5d, Article 8, Chapter 30, Acts of the Legislature, 1943. (Michie's Code, 1943, 60-8-5 (d). That reputation was in *praesenti*, and, at the time of the raid, defendant had lived in that house for two years, and it is fair to assume that her occupancy of the house, and her conduct therein, had some part in establishing its reputation.

On this evidence the jury found defendant guilty. The Judge of the Criminal Court, and the Judge of the Circuit Court of Harrison County, found no fault with the jury's verdict. Of all the individuals and courts who have particpated in the hearing of this prosecution, and who are disinterested, only this Court has been able to find such fault. Why should we? A jury's verdict in a criminal case, supported by the approval of the trial

judge, is entitled to the same credit as that accorded to it in a civil action. Only where it is clearly wrong, or without evidence to support it, should it be set aside. In my opinion, the verdict was clearly supported by the evidence and the circumstances. How can the conduct of the defendant on September 2, 1944, be otherwise appraised? It is quite evident that the jury believed the testimony of the witness Koester. He says he was invited by defendant to go upstairs with one of the women, sitting with her on the porch, for the then avowed purpose of prostitution, and the price to be charged therefor was mentioned, clearly showing that what the defendant had in mind was prostitution, which in all languages means sexual intercourse for a price. Some two weeks later the house was raided, and we find the defendant and the same two women who were present on September 2. What were they there for? Possibly, in the meantime, they had become reformed characters; but this is unlikely. It is reasonable to assume that they were there for exactly the same purpose as that which prompted their presence on September 2. Some may inquire, how do we know this? We cannot know to an absolute certainty. No one can ever know the mental processes of another individual; but we reason and reach conclusions from proven facts. Their being at this house on September 19, may have been a coincidence; but, if so, a strange one indeed. Their being there on that date, considered with their presence there on September 2, for the purpose shown by the evidence, can lead to no other reasonable conclusion than that they were there on both occasions for the purpose of prostitution; and that the defendant was fully acquainted with that purpose, and furnished facilities for carrying it into effect, and that constitutes the offense charged in the warrant.

Considerable stress has been laid upon the rule announced in several cases that a single instance of sexual intercourse does not make the house in which it occurs a house of prostitution; that one instance of solicitation does not have that effect; that the evidence of the repu-

tation of the house, standing alone, is not sufficient to sustain a conviction; and that the fact that defendant had been fined for this offense on other occasions does not sustain a conviction. It is also claimed that the evidence of the reputation of the house, and that defendant had been fined for keeping a house of ill fame, and the statement of one of the inmates on September 19, nor the one instance of solicitation, do not, taken together, rise to the high degree of proof required to establish the offense charged. It may be that no single one of these acts, standing alone, would establish the offense charged in the warrant in this case; but I dispute the statement in the majority opinion that all of them, taken together, do not sustain the charge contained in the warrant. It is not unusual to establish a fact by considering various acts of conduct, no one of which, in itself, would establish the fact, but which, taken together, do clearly establish it.

It is clear that it is not necessary to show any particular act of adultery or fornication to establish the fact that a house of prostitution is kept and maintained. *Smith* v. *State,* 52 Ga. App. 88, 182 S. E. 816; *People* v. *Lee,* 307 Mich. 743, 12 N. W. 2d 418; *State* v. *Davis,* (Mo.) 192 S. W. 23; and *Fitzgerald* v. *State,* 10 Ga. App. 70, 72 S. E. 541. In *State* v. *Johnson,* 189 Minn. 546, 250 N. W. 366, a defendant was convicted of keeping a disorderly house. In the opinion in that case it is stated:

"The testimony on the part of the state was to the effect that Superintendent of Police Meehan was walking along Marquette avenue in Minneapolis, and, upon reaching the house in question, noticed defendant, and that she beckoned to him to come up, that she admitted him to the house, and that when he reached the front door thereof defendant called in three or four girls. At this point defendant recognized Meehan as a member of the police. Meehan arrested defendant.

"One of the girls who was called in by defendant was known to Meehan as a prostitute. Meehan had

talked with people in the neighborhood and found that the house had the reputation of being a disorderly one.

"The general reputation of the place, the manner in which Meehan was solicited to come into the house, the presence of a known prostitute, and the existence of a parlor where girls were called in to be viewed, are all inconsistent with any other conclusion than that arrived at by the trial court."

The majority opinion refers to this case and disposes of it by saying, "but it is not regarded as a decision of persuasive force or an authority to be followed by this Court." The Supreme Court of Minnesota is a court of high standing, and its holding in the case referred to is, in my opinion, worthy of the consideration of this Court, as representing a reasonable and common sense appraisal of the facts there present, which are strikingly similar to those involved in the case at bar.

I fear that courts are more and more laying themselves open to the suggestion made by Judge Soper in *Jefferson Standard Life Insurance Co.* v. *Clemmer,* 79 F. 2d 724, 103 A. L. R. 171. That was an insurance case, but the comment made therein applies to any case. Discussing the question as to whether an insured person had committed suicide, he said, "The result has been in many cases of self-destruction to be found in the books that judge and jury alike have been unable to take a common sense view of the facts of life, and have seemed to be the only persons in the community who did not clearly understand what had taken place."

Ascribing to the members of the Court responsible for the majority opinion, on the factual question involved, ability, integrity and correct motives, I can only attribute their attitude to an apparent reluctance to face the facts of life, as they apply to the offense charged. The observant man does not have to indulge in vice, or other types of unlawful conduct, to know that they exist; and also to know some of the methods employed to escape punishment therefor, among which is resort to technical

objections, a play on the expression "reasonable doubt", and many other methods and intellectual devices, too numerous to mention, but including the wizardry of words so deftly employed in the majority opinion on this question. The law-abiding public of this State should be protected against crime, by a fair and reasonable administration of our criminal law; and while every person charged with crime should be accorded a fair trial, he has had that trial when he is given the protection thrown around him by the law, reasonably and sensibly applied to his case. Courts err when, in dealing with criminal conduct, they use a different standard of reasoning from that employed in the everyday affairs of life, as I think has been done in this case. I cannot give my assent to an opinion which, in my opinion, imposes on law-enforcing agencies technical and impractical requirements, which cannot fail to impede the prosecution of crime, and which make heavier the burden of those who battle for law and for order and for decency in this State.

I would affirm the judgment of the Criminal Court of Harrison County and the order of the circuit court of said county refusing to review said judgment.